17 Neb. App. 245
CHRYSTAL ELAINE MARANVILLE, FORMERLY KNOWN AS CHRYSTAL ELAINE DWORAK, APPELLEE AND CROSS-APPELLANT,
v.
JUSTIN TYLER DWORAK, APPELLANT AND CROSS-APPELLEE.
No. A-08-103.
Court of Appeals of Nebraska.
Filed November 25, 2008.
Terrance A. Poppe and Nicholas M. Froeschl, of Morrow, Poppe, Watermeier & Lonowski, P.C., for appellant.
Amie C. Martinez, of Anderson, Creager & Wittstruck, P.C., for appellee.
INBODY, Chief Judge, and MOORE and CASSEL, Judges.
MOOREA Judge.

I. INTRODUCTION
Chrystal Elaine Maranville, formerly known as Chrystal Elaine Dworak, sought to modify a decree and subsequent order to allow her to move the parties' four minor children from Illinois to Ohio and to modify parenting time. Justin Tyler Dworak cross claimed, requesting that custody of the four children be awarded to him, his child support obliga tions abate, and Chrystal be ordered to pay child support. The Lancaster County District Court granted Chrystal permission to move to Ohio with the three youngest children, awarded custody of the oldest child to Justin, and modified the parties' parenting time. Justin appeals from that order, and Chrystal cross appeals.

II. BACKGROUND
Justin and Chrystal were divorced on March 18, 2003. Four children were born of the marriage: Cole in 1994, Lauren in 1995, Summer in 1997, and Joseph in 2000. The Lancaster County District Court ordered joint legal custody of the children and awarded primary physical custody to Chrystal, subject to Justin's specific parenting time. Following the divorce, Justin had parenting time with the children approximately 6 out of every 14 days and did not miss any of that parenting time.
Following the divorce, Chrystal married Jeffrey Maranville (Jeff), and together they have a daughter born in 2005. They were expecting a second child in June 2008. Chrystal does not work outside of the home and continues to be a very involved caretaker for the Dworak children. Jeff worked for Goodyear in Lincoln, Nebraska, from 1998 until December 2004. In the summer of 2004, Jeff was offered a position as a Midwest regional sales manager in the Chicago, Illinois, area. Chrystal moved the court for an order granting her permission to move the children to Illinois.
On November 5, 2004, the district court granted Chrystal permission to move the four Dworak children from Lincoln to Geneva, Illinois, which decision this court affirmed by memorandum opinion. Dworak v. Dworak, 13 Neb. App. xix (No. A-04-1337, July 12, 2005). The district court's order provided for Justin's parenting from 6 p.m. Friday through 6 p.m. Sunday every other weekend in the Geneva area as well as specific holiday and summer parenting time. Justin exercised all of that parenting time, which was approximately 150 days per year. Justin also made special trips to Illinois to attend extracurricular activities and visit the children on occasions such as the first day of school.
In December 2005, Jeff learned that the sales management group at Goodyear was going to be reorganized and that his position would be relocated to Akron, Ohio. Jeff and Chrystal declined to move, and Jeff was demoted to a sales representative for Goodyear in the Chicago area.
In 2007, Veyance Technologies (Veyance) purchased the Goodyear division within which Jeff worked. In the fall of 2007, Veyance offered Jeff a position as a "distributor channel specialist." Jeff's accepting this position would require Jeff and Chrystal to move their family to the Akron area, where the company's headquarters are based. The position may require Jeff to travel within the U.S. and Canada approximately 25 percent of the time; however, Jeff understands the position to require minimal travel.
The position in Akron would pay Jeff less than his current pay. In 2005, Jeff's earnings were $147,808; in 2006, they were $163,355; and in 2007, Jeff earned approximately $140,000. Jeff's base pay as a sales representative is $103,000, and the additional compensation is earned through commission. The new position in Ohio would pay approximately $124,000 and would not allow for commission opportunities.
Jeff has been with Goodyear for 14 years, and the move to Akron would be his fifth move within that time. Akron is approximately 950 miles from Lincoln. Geneva is approximately 500 miles from Lincoln. The education and housing opportunities in Akron are similar to those in Geneva; however, the cost of living in Ohio is less.
Following his divorce from Chrystal, Justin remarried. Justin and his current wife have no children together; however, she is the custodial parent of her two sons. Justin is a dentist practicing in Lincoln, earning approximately $295,000 per year.
The custody modification hearing in the present case was held on December 17, 2007. Dr. George Williams, a clinical psychologist; James Hill, the director of marketing for North America at Veyance; Chrystal; and Jeff testified on Chrystal's behalf. Justin, his current wife, and Dr. Thomas Gilligan, a clinical psychologist, testified on behalf of Justin. Additional evidence adduced from these sources will be set forth as needed in the analysis section below.
The court granted Chrystal permission to move the three youngest Dworak children, Lauren, Summer, and Joseph, to Ohio; awarded custody of the oldest child, Cole, to Justin (pursuant to the agreement of the parties); modified parenting time; and allocated visitation expenses. Justin appeals, and Chrystal cross appeals.

III. ASSIGNMENTS OF ERROR
Justin alleges that the court erred and abused its discretion by (1) failing to award custody of the three youngest Dworak children to him and (2) granting Chrystal permission to remove those minor children from Illinois to Ohio.
Chrystal alleges, restated, that the court erred in (1) granting her insufficient regular and summer visitation with the Dworak children, (2) its determination of visitation transportation, (3) ordering her to pay the transportation expenses for all four of the Dworak children, and (4) its determination of child support.

IV. STANDARD OF REVIEW
Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. McLaughlin v. McLaughlin, 264 Neb. 232, 647 N.W.2d 577 (2002). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. Id.
As with other visitation determinations, the matter of travel expenses associated with visitation is initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. Vogel v. Vogel, 262 Neb. 1030, 637 N.W.2d 611 (2002).
Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. Gallner v. Hoffman, 264 Neb. 995, 653 N.W.2d 838 (2002).

V. ANALYSIS

1. DENIAL OF JUSTIN'S REQUEST FOR CUSTODY OF ALL FOUR DWORAK CHILDREN
[1] Justin asserts that the district court erred in refusing to award him custody of all four of the minor children. However, Justin does not separately argue this assigned error in his brief. Errors that are assigned but not argued will not be addressed by an appellate court. Kumke v. Kumke, 11 Neb. App. 304, 648 N.W.2d 797 (2002).
[2-5] To the extent that Justin's argument for custody is part and parcel of his argument against removal to Ohio, we are governed by the principle that ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. Vogel v. Vogel, supra. The party seeking modification of child custody bears the burden of showing such a change in circumstances. Id. Removal of a child from the state, without more, does not amount to a change of circumstances warranting a change of custody. Id. Nevertheless, such a move, when considered in conjunction with other evidence, may result in a change of circumstances that would warrant a modification of the decree. Id.
In Vogel v. Vogel, the Nebraska Supreme Court addressed a similar issue and determined that resolution of both the mother's motion to remove the children and the father's motion for a change of custody depended upon consideration of whether the best interests of the children were served by allowing them to remain in the mother's custody and move with her or by transferring their custody to the father and allowing them to stay in Nebraska. The father asserted that modification was required not because the mother was unfit, but, rather, because the mother indicated her intention to move. Id. Essentially, the court found, the father contended that it would be in the best interests of the children to remain in Nebraska rather than move. Id.
The present case differs somewhat because Chrystal has already been granted permission to remove the children from Nebraska to Illinois and now seeks to move them again, from Illinois to Ohio. Justin argues in his brief that Chrystal's pro posed move with the children to Ohio would create even more of a burden on his visitation with the children. However, Justin argues only against the move to Ohio and does not provide any evidence that it would be in the children's best interests to live with him in Nebraska.
Justin cites our decision in Carraher v. Carraher, 9 Neb. App. 23, 607 N.W.2d 547 (2000), in which we determined that a mother who had moved a child from Nebraska with out permission from the father or the court must return to Nebraska or risk losing custody of the child. We find that Carraher is distinguishable from the present case, as Chrystal did not attempt to move the children without the court's per mission and Justin points to nothing in the record to support his claim that Chrystal has failed to follow the court's previous orders.
We find that Justin failed to meet his burden of proof that the best interests of the Dworak children (except for Cole) required a change in custody. The record supports the district court's findings that Chrystal is meeting the needs of those children. For these reasons, the trial court did not abuse its discretion in failing to award Justin custody of Lauren, Summer, and Joseph.

2. Grant of Permission to Move to Ohio
[6,7] In order to prevail on a motion to remove a minor child to another jurisdiction, a custodial parent has the burden to prove that he or she has a legitimate reason for leaving the state and that it is in the best interests of the child to continue living with him or her. See McLaughlin v. McLaughlin, 264 Neb. 232, 647 N.W.2d 577 (2002). Although this appears to be an issue of first impression in Nebraska, we think this standard applies both when a custodial parent seeks to move a child from Nebraska to a different state and in considering a subsequent move to yet another state.

(a) Legitimate Reason to Leave State
[8] Justin asserts that Chrystal did not prove a legitimate reason for leaving the state because Jeff will essentially receive less pay by accepting the position in Ohio than were he to remain in his current position in Illinois. The Nebraska Supreme Court has previously determined that a career enhancement for a custodial parent's spouse is a legitimate reason for removal when the career change occurs after remarriage. See id. Jeff and Hill testified that while the position in Ohio would initially yield a decrease in pay, the potential for promotion within Veyance was more likely than if Jeff were to remain in Illinois as a sales representative, where there was no opportunity to be promoted. Also, due to Veyance's restructuring of sales representative compensation, Jeff's potential to retain his cur rent income, which is based significantly on commissions, was uncertain. Finally, Jeff testified that due to the lower cost of living in Ohio, his annual income in Ohio would effectively equal his $140,000 annual earnings in the Chicago community. For these reasons, we find the court did not abuse its discretion in finding that Chrystal had proved a legitimate reason for the move to Ohio.

(b) Best Interests Determination
[9,10] In considering a motion to remove a minor child to another jurisdiction, the paramount consideration is whether the proposed move is in the best interests of the child. Vogel v. Vogel, 262 Neb. 1030, 637 N.W.2d 611 (2002). In determining whether removal to another jurisdiction is in the child's best interests, the trial court considers (1) each parent's motives for seeking or opposing the move; (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent; and (3) the impact such a move will have on contact between the child and the noncustodial parent, when viewed in the light of reasonable visitation. McLaughlin v. McLaughlin, supra.

(i) Each Parent's Motives
[11] The ultimate question in evaluating the parties' motives is whether either party has elected or resisted a removal in an effort to frustrate or manipulate the other party. Id. The trial court found that neither party's motives were improper in this case.
Chrystal's motive in seeking to relocate with the children to another state was to allow Jeff to accept a new position in Ohio which would provide Jeff with better job stability and increased promotional opportunities. Hill testified that the Maranvilles were required to move to the Akron area in order for Jeff to begin and remain working for Veyance in the position he was offered.
Justin's motive in opposing the move was to be able to maintain more frequent and regular contact with the parties' children without the additional time and expense which would be necessary if the three youngest Dworak children moved an additional 450 miles away.
We find that Chrystal's and Jeff's motives are not efforts to frustrate or manipulate each other. This factor weighs neither in favor of nor against the move.

(ii) Enhancing Quality of Life
[12,13] In determining the potential that the removal to another jurisdiction holds for enhancing the quality of life of the parent seeking removal and of the children, a court should consider the following factors: (1) the emotional, physical, and developmental needs of the children; (2) the children's opinion or preference as to where to live; (3) the extent to which the relocating parent's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational advantages; (6) the quality of the relationship between the children and each parent; (7) the strength of the children's ties to the present community and extended family there; and (8) the likelihood that allowing or denying the move would antagonize hostilities between the two parties. McLaughlin v. McLaughlin, 264 Neb. 232, 647 N.W.2d 577 (2002). This list does not set forth a hierarchy of factors; instead, depending on the circumstances of a particular case, any one factor or combination of factors may be variously weighted. See id.
We note that these factors were intended to help courts assess the potential the move has to enhance the quality of life of the custodial parent and of the children. As such, in order for the factors to weigh in a custodial parent's favor, he or she must show that the relocation has the potential to enhance or improve the quality of life for the children and custodial parent when all eight factors are considered as a whole. While custody is not to be interpreted as a sentence to immobility, we think it is important in contemplating a move such as the one at issue to give due consideration to whether such move indeed will improve the children's lives, or merely maintain the status quo, only in a new location. See Vogel v. Vogel, 262 Neb. 1030, 637 N.W.2d 611 (2002).
We turn to an analysis of the quality of life factors.

a. Children's Emotional, Physical, and Developmental Needs
To determine the extent to which the move has the potential to enhance the quality of life of Chrystal, Lauren, Summer, and Joseph, we must first consider the impact the move may have on emotional, physical, and developmental needs of the children. The record shows that both Chrystal and Justin are caring and devoted parents and provide for their children's emotional, physical, and developmental needs.
Drs. Williams and Gilligan, both clinical psychologists, testified in this regard. Both doctors met only with the two older children, Cole and Lauren, not with Summer and Joseph, who were respectively ages 10 and 6 at the time of the modification hearing.
Dr. Williams recommended that Cole be allowed to live with Justin in Lincoln due to Cole's stated wishes. Dr. Williams testified that the separation of the siblings due to Cole's living with Justin in Nebraska would not cause any significant harm, at least to Lauren and Cole, whom he interviewed. Chrystal did not oppose this recommendation, and the parties agreed that Cole's custody would be changed to Justin.
Dr. Williams supported the move to Ohio and indicated that in his opinion, the move would not be harmful to the children psychologically. Dr. Williams also testified that frequent, regular contact with a noncustodial parent is beneficial to children, especially to younger children.
Dr. Gilligan testified to the many ways children benefit from frequent contact with their parents, including in their personal development, personalities, self esteem, and self awareness, and that they generally do better in social relationships and their academic achievements are higher. Dr. Gilligan did not express an opinion regarding whether the move to Ohio would have a negative impact on the Dworak children.
The trial court made no specific findings as to the potential the move to Ohio had to impact the emotional, physical, and developmental needs of the children. Based upon the testimony of experts; the visitation schedule fashioned by the trial court, which we discuss in further detail below; and both parties' proven desire to provide for the needs of the children, we conclude that the emotional, physical, and developmental needs of the Dworak children will not be negatively impacted by the move. On the other hand, the evidence does not show that these needs will be met in any better fashion as a result of the move to Ohio. As such, this factor weighs neither in favor of nor against the move to Ohio.

b. Children's Preference
We next consider the children's opinion or preference as to where to live. Lauren expressed to Dr. Williams that she preferred to remain with Chrystal. There is nothing in the record regarding Summer's or Joseph's preference. Cole preferred to live with Justin, and the parties stipulated that Cole would live with Justin. The record does not indicate whether Lauren, Summer, or Joseph preferred to live in Illinois or Ohio. We find that due weight should be given to Lauren's preference to remain with Chrystal, but that this factor does not weigh either in favor of or against the move to Ohio.

c. Chrystal's Enhanced Income or Employment
[17] Next, we consider the extent to which Chrystal's income or employment will be enhanced. A custodial parent's income can be enhanced because of a new spouse's career opportunities, for purposes of determining the potential that the removal to another jurisdiction holds for enhancing the quality of life of the parent seeking removal and of the children. See McLaughlin v. McLaughlin, 264 Neb. 232, 647 N.W.2d 577 (2002). In the present case, Chrystal does not work outside the home; therefore, her income is completely dependent upon Jeff. Hill testified that if the family were to remain in Illinois, Jeff would remain in his current position, where his income was increasingly affected by commissions and he would have no opportunity for promotion. While Jeff's income in Illinois has been higher than his starting base salary in Ohio would be, Jeff would have the opportunity for promotions if he accepts the position in Ohio. Jeff's income would also not be dependent upon uncertain commissions. Additionally, the cost of living in Ohio is significantly less than that of living in Illinois. For these reasons, we find that this factor weighs in favor of the move.

d. Improved Housing or Living Conditions
We next consider the degree to which the Maranvilles' housing or living conditions would be improved.
The trial court found that the family's housing conditions in Ohio would be better than what the children enjoyed in Illinois because Jeff and Chrystal intend to build a seven bedroom home in Ohio, whereas they have a four bedroom home in Illinois. The court stated that the Ohio home would be at a "significantly decreased cost." Chrystal testified that the Maranvilles had "somewhat" looked into building a house in Ohio, although they had made no commitments, and that it "[m]ost likely" would be a seven-bedroom home. Jeff testified that they would look for a home of the same size and with the same amenities as in Illinois. According to Jeff, their home in Illinois was worth approximately "high 600's to low seven" and in Ohio a comparable home would cost "from the high 200s to the high 300s." Real estate taxes in Ohio would be approximately half of those in Illinois. However, Chrystal testified that they would live in a community in Ohio similar to that they live in now. Finally, the cost of living is lower in Ohio than in the Chicago area.
The children's living conditions may be somewhat improved with the move to Ohio. We find that this factor weighs slightly in favor of the move.

e. Existence of Educational Advantages
[18] We also consider the existence of educational advantages available in Ohio. This factor receives little or no weight when the custodial parent fails to prove that the new schools are superior. See McLaughlin v. McLaughlin, 264 Neb. 232, 647 N.W.2d 577 (2002); Farnsworth v. Farnsworth, 257 Neb. 242, 597 N.W.2d 592 (1999). There is little evidence regarding the educational advantages in Ohio versus Illinois. Because Chrystal has not proved that the Ohio schools are superior to those in Illinois, this factor weighs neither in favor of nor against the move.

f. Relationship Between Children and Each Parent
We next consider the quality of the relationship between the children and each parent. It is clear that in this case, each parent has a very strong bond and relationship with each child. As such, we must give due weight to the effect that the move to Ohio may have on the quality of Lauren's, Summer's, and Joseph's relationships with both Justin and Chrystal.
We have already determined that Chrystal will retain custody of the three youngest Dworak children. As such, her relationship with them will be largely unaffected by a move to Ohio.
On the other hand, Justin will see the parties' three youngest children less if they move to Ohio, and he testified that the move would adversely impact his relationship with those children. In Brown v. Brown, 260 Neb. 954, 621 N.W.2d 70 (2000), the Nebraska Supreme Court concluded that because of the close relationship and extensive contacts between father and children, this factor weighed against a long distance relocation with the mother. In the present case, although the children were separated from Justin by a considerable distance by living in Illinois, should they move to Ohio, that distance would nearly double. Justin has made every effort to see the parties' children as much as possible, missing none of the allowed visitation in Illinois despite the distance. However, Justin testified that for several reasons, if the children were to move to Ohio, it would not be as easy for him to make incidental visits and he would likely see the children less.
While the move to Ohio will certainly affect the quantity of time that Justin will spend with the children, given the visitation schedule fashioned by the trial court, together with Justin's proven efforts and success in maintaining a close relationship with the children, we conclude that the quality of Justin's relationship with the children will not be negatively impacted by a move from Illinois to Ohio. This factor does not prevent or favor the move.

g. Children's Ties to Each Community
Next, we consider the children's ties to the present community, Geneva, as well as their ties to the potential new community in Akron. Jeff testified that while there are no family ties to Illinois, Jeff does have extended family, including his parents, grandparents, siblings, and nieces or nephewsstep-relatives of the Dworak childrenin the Akron area. Conversely, the children were established in school in Illinois and had developed friendships there. As such, this factor weighs neither in favor of nor against the move.

h. Likelihood of Antagonizing Hostilities
Finally, we consider the likelihood that allowing or denying the move would antagonize hostilities between Justin and Chrystal. The trial court found that regardless of whether there is a move in this case, there will be no increase or decrease in hostilities between the parties, and that it was not likely that the hostility and dissention between the adults would change in the future. We agree that the parties are already quite hostile toward one another. The record shows that the parties have had significant difficulties with visitation issues while the children were located in Illinois. Given the additional distance to Ohio and corresponding travel issues, it is possible that these difficulties could increase. In any event, we find that the likelihood the move has to antagonize the hostilities between Justin and Chrystal does not weigh either in favor of or against the move.

i. Conclusion Regarding Quality of Life
The trial court found that the quality of life of Chrystal and the children in her custody would be "negatively impacted" if Chrystal were not allowed to relocate, due to the possible decrease in Jeff's earning capacity and actual earnings which would create a financial hardship if she were not allowed to relocate with Jeff. The district court also found that the quality of life would be improved if Chrystal and the children were allowed to move.
In our de novo review and in consideration of all eight of the quality of life factors listed above, we determine that two factors, the extent to which the relocating parent's income or employment will be enhanced and the possible improvement in housing and living conditions, weigh in favor of the move. The remaining factors weigh neither in favor of nor against the move.

(iii) Impact of Move on Contact Between Justin and Children
[19-22] The third factor in the best interests determination is the impact of the move on the contact between the children and the noncustodial parent, when viewed in light of reason able visitation arrangements. This consideration focuses on the ability of the court to fashion a reasonable visitation schedule that will allow the noncustodial parent to maintain a meaningful parent child relationship. See Farnsworth v. Farnsworth, 257 Neb. 242, 597 N.W.2d 592 (1999). Generally, a reasonable visitation schedule is one that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent. See Carraher v. Carraher, 9 Neb. App. 23, 607 N.W.2d 547 (2000). Of course, the frequency and the total number of days of visitation and the distance traveled and expense incurred go into the calculus of determining reason ableness. Id. Indications of the custodial parent's willingness to comply with a modified visitation schedule also have a place in this analysis. Id.
In the present case, we give careful consideration to the fact that this is not the first time Chrystal has been before the court asking to move the Dworak children a significant distance away from their father. The first move, in 2004 from Nebraska to Illinois, reduced Justin's parenting time from about 6 out of every 14 days to every other weekend and certain holidays, approximately 150 days per year. While that contact has allowed Justin to maintain a meaningful relationship with the parties' children, Chrystal now seeks to move again, this time to Ohio, an even greater distance away from Justin.
Justin's visitation with the three younger Dworak children would consist of holiday visits in Lincoln as previously ordered in 2004, one "protracted" weekend each month during the school year (Thursday evening through Monday morning) in Ohio, spring break in Lincoln in alternating years, and summers in Lincoln from 14 days after school is dismissed in Ohio until 7 days prior to the commencement of school in Ohio.
Airfare to Ohio would be more expensive than airfare to Chicago. According to Justin, airfare to Chicago costs approximately $200, while airfare to Ohio could cost between $500 and $1,000. Additionally, traveling to Chicago takes Justin approximately 3 hours total because it is a direct flight. There are no direct flights from Lincoln or Omaha, Nebraska, to the Akron area; therefore, it could generally take about 8 hours to travel there. Justin further testified that because of the increased distance, he would not be able to drive to see the children in Ohio as he had in Chicago. Also, Justin testified that because of the increased distance and time, there may be weekends in which it would not be possible for him to get to Ohio.
The court did attempt to fashion a reasonable visitation schedule in light of the distance involved between the two households, approximately 950 miles, and the split custody arrangement. The primary difference in Justin's visitation in Ohio compared to Illinois would be that the weekend visitation decreases from every other weekend to one protracted weekend a month. The holiday, school break, and summer visitations remain roughly the same. There certainly would be increased traveltime, expense, and inconvenience to Justin in traveling to Ohio and, to a lesser extent, the children when they travel to Lincoln. We conclude that the court's order allows Justin to maintain reasonable visitation with the three younger Dworak children. Although there is an impact on Justin and the children due to the increased distance apart, we conclude that it does not prevent the removal of the children to Ohio.
In taking their respective positions in this case, each parent seems sincerely motivated to do what he or she genuinely believes is in the best interests of the children. Weighing all of the factors in order to determine whether to permit Chrystal to relocate with Lauren, Summer, and Joseph is a difficult task. Where there are no clearly right or clearly wrong answers, it is particularly important to bear in mind that our standard of review allows us to give deference to the discretion of the trial judge, who observed the demeanor of the witnesses as he heard their testimony. To reverse would require us to find that the trial court's decision is untenable and unfairly deprives Justin of a substantial right or just result. After reviewing each factor in detail, we conclude that the district court did not abuse its discretion in granting Chrystal permission to relocate with the children to Ohio.

3. VISITATION SCHEDULE
Chrystal asserts that the court erred in setting her parenting time with Cole during the school year and further that the court's order was not specific in setting this parenting time. She also alleges that the court allowed her "extremely limited" summer parenting time with all four of the Dworak children. Brief for appellee on cross-appeal at 24.
Chrystal was awarded protracted weekend visitation with Cole once a month in Lincoln, holiday visitation as previously ordered, spring break in Ohio in alternating years, and summer visitation in Ohio from the day school is dismissed in Lincoln until 14 days after school is dismissed in Ohio. We note that the summer visitation for both parents will result in the four Dworak children's being together for all but 1 week of the summer.
[23-25] The trial court has discretion to set a reasonable visitation schedule. See McLaughlin v. McLaughlin, 264 Neb. 232, 647 N.W.2d 577 (2002). Generally, a reasonable visitation schedule is one that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent. See Vogel v. Vogel, 262 Neb. 1030, 637 N.W.2d 611 (2002). The determination of reasonableness is to be made on a case by case basis. Id.
We note at the outset that Dr. Williams testified to the increased visitation scheduling issues which can occur as children get older and become involved in extracurricular activities. No doubt in a long distance, split custody arrangement such as this one, scheduling parenting time is difficult and neither parent is likely to view the amount of visitation he or she receives as ideal. Nonetheless, the court must fashion an arrangement which maximizes time for both parents yet allows the children as little interruption in their daily lives as possible.
The court's order setting Chrystal's monthly parenting time with Cole mirrors its order for Justin's monthly parenting time with Lauren, Summer, and Joseph. With regard to summer visitation, Chrystal will have substantially less time with the children than Justin. However, it is Chrystal's desire to move to Ohio that precipitated Cole's change of custody and the need to fashion a reasonable visitation schedule between Justin and the remaining children in order to preserve their relationship. Chrystal's parenting time with the three younger children actually increases during the school year as a result of the change in Justin's monthly visitation. Chrystal's summer parenting time with the three younger children is essentially the same as in the previous order, with the exception that the court did not specifically provide for the two weekend visits in Lincoln during the summer. Finally, we are mindful of the court's interest in keeping all four Dworak children together when possible.
Given the facts of this case, we find that the district court did not abuse its discretion in setting Chrystal's parenting time.

4. VISITATION TRANSPORTATION PROVISIONS
Chrystal alleges that the trial court erred in ordering the terms of visitation transportation for effecting the parties' parenting time. The court's order provides:
26. VISITATION TRANSPORTATION.
A. In regards to transportation for visitation all reasonable airfare transportation costs incurred for Cole traveling from Lincoln to Geneva, Illinois or Lincoln to the Akron, Ohio area and back shall be borne by [Chrystal], as will all reasonable airfare costs for transportation regarding the Court ordered visitation for the minor children, Lauren, Summer and [Joseph], to travel to Lincoln from either Chicago or the Akron, Ohio area and back. All costs of transportation referred to herein apply only to costs for the children, not for costs to [Justin] or [Justin's] family.
B. When it is [Chrystal's] holiday [Chrystal] shall provide for the transportation of Cole to [Chrystal's] home for visitation, whether it be Chicago, Illinois or Akron, Ohio, as stated above and if it is [Justin's] holiday [Chrystal] will provide the transportation for the minor children, Lauren, Summer and [Joseph], from her home to [Justin].
C. Each party is to provide roundtrip transportation which would include transportation to and from airports within a reasonable proximity from the respective party's home.
Chrystal first asserts that the order is unclear, particularly in light of paragraph 26C. Our reading of paragraph 26 as a whole indicates that Chrystal is to provide all of the transportation, including costs and roundtrip transportation to and from airports within a reasonable proximity from both her and Justin's homes, for all of the children, regardless of who is exercising visitation. Considering the visitation schedule ordered by the court, this transportation responsibility relates to when the three youngest Dworak children travel to Lincoln for holiday, spring break, and summer visitations, as well as when Cole travels to Ohio for holiday, spring break, and summer visitations. Justin then would be responsible for transporting himself and any family members, including Cole, to Illinois or Ohio to exercise his monthly visitation with Summer, Lauren, and Joseph. Likewise, Chrystal would be responsible for transporting herself and any family members, including the children, to Nebraska to exercise her visitation with Cole in Nebraska.
Chrystal also argues that requiring her to pay all of the airfare costs is unreasonable, particularly given the deviation in child support the court allowed to Justin for transportation costs. The matter of travel expenses is within the trial court's discretion, and although reviewed de novo on the record, its determination will normally be affirmed absent abuse of that discretion. Vogel v. Vogel, 262 Neb. 1030, 637 N.W.2d 611 (2002). There is no immutable standard for the allocation of travel expenses; instead, the determination of reasonableness is made on a case-by-case basis. Id. Justin will clearly incur greater costs in traveling to Ohio for his monthly visits with the children as a result of the move. We cannot say that the district court abused its discretion in the allocation of transportation expenses.

5. CHILD SUPPORT
Chrystal alleges that the district court erred in ordering child support. She specifically alleges that the order is "conflicting, confusing and not based on the correct information as to `current' child support obligations." Brief for appellee on cross-appeal at 29. Prior to the January 11, 2008, order, the court ordered Justin to pay $2,375 per month in child support for the four Dworak children. The court's January 11 order with respect to child support, which order is accompanied by work sheets, provides:
24. CHILD SUPPORT.
A. Child support should not be changed. The calculation submitted by [Chrystal] as Exhibit #83 would indicate that child support should be $2,898 per month when there are three minor children in [Chrystal's] custody and one minor child in [Justin's] custody. The Court does deviate downward, however, because of the travel expenses that [Justin] is likely to have and does order that child support remain at $2,375 per month when there are three minor children in [Chrystal's] custody and one minor child in [Justin's] custody.
B. When there are three minor children, Lauren, Summer and [Joseph], in the custody of [Chrystal] child support would be in the normal amount of $3,295 per month based upon the parties' current earnings. The Court does deviate 18% as done above for transportation costs to be incurred by [Justin]. Child support will thus be set for three minor children at $2,702 per month, for two minor children at $2,433 per month, and for one minor child at $1,805 per month.
We find that the child support is sufficiently clear and that Chrystal has not shown the order to be an abuse of discretion. The order provides a reason for deviation from the guidelines and provides for the split custody arrangement. The order requires Justin to pay child support of $2,375 per month until Cole is no longer receiving support, at which time Justin's child support obligation will be $2,702 per month for three minor children, $2,433 per month for two minor children, and $1,805 per month for one minor child.
Chrystal finally alleges that the child support calculation does not take into account the expenses Chrystal will incur in traveling to see Cole in Nebraska and the cost of bringing siblings along to see him. However, at the modification hearing, Chrystal did not produce evidence as to what her travel expenses would be from Ohio to Nebraska; nor did she indicate that she would exercise every monthly visitation. Further, since Chrystal is not paying child support and Justin's child support is calculated using zero income for Chrystal, there is no rationale for deviating from the child support guidelines concerning Chrystal's travel expenses. We find that the court did not abuse its discretion in not considering Chrystal's travel expenses in setting child support.
For the reasons set forth herein, we find that the court did not abuse its discretion in setting child support.

VI. CONCLUSION
We conclude that the trial court did not abuse its discretion in refusing to award custody of Lauren, Summer, and Joseph to Justin; in allowing Chrystal to relocate with the children to Ohio; in determining visitation and allocating visitation expenses; or in setting child support.
Affirmed.