IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ARNOLD V. ARNOLD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DANIELLE C. ARNOLD, NOW KNOWN AS DANIELLE C. MAYO, APPELLEE,

V.

DAVID B. ARNOLD, APPELLANT.

Filed September 19, 2017.    No. A-17-170.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge. Affirmed.

David B. Arnold, appellant pro se.

Danielle C. Mayo, appellee pro se.

INBODY, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

David B. Arnold appeals from the order of the Douglas County District Court which modified the parties' parenting plan. Finding no abuse of discretion in the district court's order, we affirm.

## BACKGROUND

The marriage of David and Danielle C. Arnold, now known as Danielle C. Mayo, was dissolved by the court in 2010. Danielle was awarded primary physical custody of the parties' two minor children subject to David's parenting time. On September 22, 2016, Danielle filed a complaint to modify the parenting plan, alleging that the children no longer wished to visit David during the week or spend the night at his residence and had been refusing to attend visitation. David filed an answer and counterclaim, in which he asked the court to award him sole physical

- 1 -

and legal custody of the children subject to Danielle's parenting time. He also asked the court to hold Danielle in contempt of court for willfully withholding his right of parenting time with the children on 15 dates between August 31 and October 19, 2016.

A hearing was held in January 2017 at which both parties appeared pro se. At the outset, the district court stated its intention to speak with the minor children on the record but in chambers. Neither Danielle nor David objected to this procedure.

According to the evidence presented at the hearing, the original parenting plan granted David parenting time with the children, including overnight visits. However, an ex parte order was issued in February 2016 suspending overnight visitation due to a bed bug issue at David's residence, which was not remedied until September. The girls spent two weeks with David in Missouri during the summer of 2016, but after that time, they no longer wanted to spend time with him. Danielle testified that despite the girls' reluctance to visit with David, she encouraged them to do so and insisted that they continue to communicate with him by calling him or sending him text messages.

At the time of the hearing, the parties' older daughter was 15 years old and in 9th grade. She is a straight-A student and involved in various clubs at school. She described her relationship with David as "strained" and said that he is disrespectful to her and her sister, does not respect their opinions, and is not a nice person. As of the hearing date, she was no longer interested in attempting to repair her relationship with David by attending family therapy and said she did not want to see him at all. She testified that although Danielle has encouraged the girls to attend visits with David, she does not wish to do so.

The younger daughter was 12 years old and in 6th grade. She earns A's and B's in school and is also involved in various clubs and activities. She testified that her relationship with David is "not that good," because she does not know when he is telling the truth, he does not seem to try his best to take care of the girls, and he yells and swears at them. Like her sister, she informed the court that she does not want to see David.

Both of the girls also testified about the condition of David's residence and indicated that they did not want to spend the night with him. The house has only one bedroom, which contains a bed in which David sleeps and bunkbeds where the girls sleep. The older daughter said the house was dirty and crowded and not suitable for overnight visits, and the younger daughter said the residence is "really filthy" and littered with old papers, cans, and other clutter. The older daughter explained that she is now too tall to fit in the bunkbed, and the room is simply too small.

David acknowledged an ongoing problem in his relationship with his children, but he blamed Danielle for turning the girls against him. He indicated that he was seeking a change in custody so that he may reconnect with the girls and repair their broken relationship. He acknowledged that the older daughter is intelligent, but when asked whether she was entitled to her own opinions at age 15, David replied that she was as long as those opinions are based on fact, which he did not believe was the case here.

The district court subsequently found that Danielle proved a material change of circumstances regarding the original parenting plan. The court explained from the bench that it had the "absolute pleasure" to speak with the girls who are "excellent young ladies, very smart, very in tune with what's going on" and said it had the opportunity to have a "very good conversation" with them regarding the issues in this case. In its written order, the court found the

girls' testimony to be compelling and credible. Accordingly, the court modified the existing parenting plan by ordering, in relevant part, that David have only therapeutic visitation with the children with the assistance of a therapist for a period of 90 days. The therapeutic visits were to occur once or twice per week during that 90-day period.

After the first 90 days, David was ordered to continue to attend therapy with the children for 1 year unless the therapist opines that 1 year of therapy is not necessary. In addition, after the first 90 days, David was awarded parenting time with the children every Wednesday evening from 5 p.m. until 8 p.m. as well as every other weekend, consisting of Friday from 5 p.m. until 9:30 p.m., Saturday from 9:30 a.m. until 9:30 p.m., and Sunday from 9 a.m. until 9 p.m. Finally, the court ordered that after 6 months of therapy sessions between David and the children, and in the event David moves into a new residence with adequate living conditions and sleeping arrangements for the children, he may resume weekend overnight visits every other weekend.

The court additionally determined that the credible evidence proved that Danielle had exhausted all efforts to motivate and convince the children to visit David, but the children were opposed to visitation and Danielle cannot force them to go. Therefore, Danielle had not willfully interfered with David's parenting time, and thus, the order to show cause was denied. David's counterclaim to modify custody of the children was also denied. David timely appeals to this court.

## ASSIGNMENTS OF ERROR

David assigns, summarized and restated, that the district court erred in (1) allowing the uncontested testimony of the children, (2) failing to hold Danielle in contempt for denying him parenting time, (3) substantially reducing his parenting time with the children and ordering therapeutic sessions as a condition to regain parenting time with the children, and (4) ordering vague and financially burdensome goals for him to achieve in order to regain his parenting time with the children.

## STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016).

## ANALYSIS

*Children's Testimony.*

David argues that the district court erred in allowing the uncontested testimony of the children. He claims that he should have been afforded the opportunity to cross-examine the children either directly or indirectly through the court. We find that this issue has not been preserved for appellate review.

A litigant's failure to make a timely objection waives the right to assert prejudicial error on appeal. *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015).

David acknowledges that he failed to object when the court explained its procedure for questioning the children. But he argues that as a pro se litigant, he could not be sure how the court would proceed with the testimony of the children, and he was apparently unaware that he needed to object to the in camera procedure when the district court gave him the opportunity to do so.

A pro se litigant will receive the same consideration as if he or she had been represented by an attorney, and, concurrently, that litigant is held to the same standards as one who is represented by counsel. *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015). Pro se litigants, like any other, may not present issues, arguments, and theories for the first time on appeal. *Id*. A lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Id*. Thus, despite his pro se status, David was required to object to the procedure of which he now complains. Because he failed to do so, this issue has not been preserved for review on appeal.

*Contempt.*

David argues that the district court erred in failing to hold Danielle in contempt for her willful interference with his parenting time. We disagree.

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id*. Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence. *Id*.

In the present case, the district court declined to hold Danielle in contempt, finding that the evidence failed to establish that she had intentionally interfered in David's parenting time with the children. To the contrary, the district court decided that the credible evidence proved that Danielle had exhausted all efforts to motivate and convince the children to visit David. The court observed that the children are opposed to visiting David, and Danielle cannot force them to do so.

The older daughter testified that Danielle would encourage the girls to see David and talk things out with him or at least try to talk with him via text message. Likewise, Danielle testified that although she will not force the girls to get in David's vehicle in order to attend parenting time, she has insisted that they communicate with him by having them call him and send him text messages. In addition, the court had previously ordered family therapy for David and the children, and Danielle called that very day to set up the first appointment and informed David after she had done so. David failed to provide the necessary insurance information, however, and the session was ultimately cancelled.

Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). We give weight to the district court's conclusion that Danielle has attempted to facilitate visitation between David and the children, but it would be difficult for her to force children of their age to attend visitation when they are so adamantly opposed to it. We therefore find that the district court did not err in concluding that any interference with David's parenting time was not done willfully and declining to hold Danielle in contempt of court.

*Modifying Parenting Time and Ordering Therapeutic Visits.*

David claims that the district court erred in modifying his parenting time and ordering therapeutic visitation for the first 90 days of the amended parenting plan. We find no abuse of discretion in the modified parenting plan.

Parenting time established by a marital dissolution decree may be modified upon a showing of a material change of circumstances affecting the best interests of the children. *Mark J. v. Darla B.*, 21 Neb. App. 770, 842 N.W.2d 832 (2014). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.* The party seeking to modify parenting time has the burden to show a material change in circumstances affecting the best interests of the child. *Id.*

In the instant case, the district court concluded that Danielle demonstrated a material change in circumstances affecting the best interests of the children in that the children no longer wish to spend any time with David due to his treatment of them and the condition of his residence. The girls were ages 15 and 12, and the court found their testimony "compelling and credible." They were able to articulate their feelings to the court and explained why they had no desire to attend visitation with David and were particularly opposed to spending the night at his residence. Given the girls' ages and sound reasoning, the court was permitted to consider their opinions. See Neb. Rev. Stat. § 43-2923(6)(b) (Reissue 2016) (in determining custody and parenting arrangements, court shall consider best interests of minor child, including desires and wishes of minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning).

The court recognized that it is difficult to force teenagers to attend visitation if they are opposed to doing so. And given the state of the relationship between David and the children, forcing them to continue to adhere to the original parenting plan did not appear to be in their best interests. The court therefore did not abuse its discretion in finding the existence of a material change in circumstances affecting the best interests of the children. The question is then whether the court abused its discretion in reducing David's parenting time and ordering therapeutic visits for the first 90 days.

Visitation relates to continuing and fostering the normal parental relationship of the noncustodial parent with the minor children of a marriage which has been legally dissolved. *Mark J. v. Darla B., supra.* The best interests of the children are primary and paramount considerations in determining and modifying visitation rights. *Id.*

The trial court has discretion to set a reasonable visitation schedule. See *Maranville v. Dworak,* 17 Neb. App. 245, 758 N.W.2d 70 (2008). The determination of reasonableness is to be made on a case-by-case basis. *Id.* The Nebraska Supreme Court has previously stated that limits on visitation are an extreme measure, but such limits may be warranted where they are in the best interests of the children. See *Fine v. Fine*, 261 Neb. 836, 626 N.W.2d 526 (2001).

In the instant case, as of the time of the hearing, the children expressed a desire to have no contact with David. Nevertheless, the court opined that their best interests would be served by continuing to have a relationship with him, recognizing, however, that the relationship was in need of repair. The undisputed evidence establishes that the relationship between David and the children

has deteriorated, but rather than merely forcing teenagers to spend time with their father against their wishes, the court crafted what it termed a "transition plan" to aid in repairing their relationship. Upon our de novo review of the record and given the facts of this case, we cannot find that that decision constitutes an abuse of the trial court's discretion. The restriction on David's parenting time is fairly limited and brief, limited to the first 90 days and increasing thereafter. The therapeutic sessions are meant to assist David and the girls in rebuilding their relationship, which the trial court found to be in the best interests of the children. We therefore find no merit to this assigned error.

*Vague and Financially Burdensome Goals.*

David alleges that the district court erred in ordering vague and financially burdensome goals for him to achieve in order to regain his parenting time with the children. Specifically, he claims that conditioning the resumption of his overnight parenting time upon his moving into a new residence constitutes an abuse of discretion. Under the facts of this case, we find no abuse of discretion in the terms of the modified parenting plan.

As noted above, the best interests of the children are primary and paramount considerations in determining and modifying visitation rights. See *Mark J. v. Darla B.*, 21 Neb. App. 770, 842 N.W.2d 832 (2014).

In the present case, as part of the transition plan, the court significantly reduced David's parenting time during the first 90 days while he and the children work with the therapist to rebuild their relationship. Thus, eliminating overnight visitation during that time period is in line with the goal of working towards building a healthy relationship between David and the children. After the first 90 days, David's parenting time increases to every Wednesday night and every other weekend, without overnight visits. After 6 months, David has the ability to resume overnight visitation upon securing a residence which has adequate living conditions and appropriate sleeping arrangements for two teenage girls. It is with this final provision that David appears to take issue. Essentially he argues that he does not have the financial capacity to meet the court's residence requirements.

The evidence before the court was that David's house was a one bedroom home that the older daughter described as "small, definitely crowded." The girls slept in bunk beds in the same room as their father. The older daughter testified that she is "simply too tall" for the bunk bed, and the room is too small for the three of them. Given our standard of review and the facts of this case, we cannot find that it was an abuse of discretion for the court to require David to secure a different residence with adequate sleeping conditions as a prerequisite for overnight visitation with his teenage daughters. Until that is accomplished, David has abundant parenting time with his daughters for nearly all of their waking hours every other weekend.

## CONCLUSION

We conclude that the district court did not abuse its discretion in modifying the parenting plan or declining to hold Danielle in contempt of court. We further find that David failed to preserve the issue of the children's uncontested testimony for appellate review. As a result, we affirm the order of the district court.

AFFIRMED.