IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ALICIA K. V. GARRETT S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ALICIA K., APPELLEE,

V.

GARRETT S., APPELLANT, AND STATE OF NEBRASKA, INTERVENOR-APPELLEE.


STATE OF NEBRASKA ON BEHALF OF BRYCE S., A MINOR CHILD, APPELLEE,

V.

GARRETT S., THIRD-PARTY PLAINTIFF, APPELLANT, AND
ALICIA K., THIRD-PARTY DEFENDANT, APPELLEE.


Filed October 24, 2017.    Nos. A-16-630, A-16-635.


Appeals from the District Court for Lincoln County: JODI NELSON, Judge. Affirmed.

W. Randall Paragas, of Paragas Law Offices, for appellant.

Linsey A. Camplin, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, for appellee Alicia K.


MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Garrett S. appeals from orders entered by the district court for Lancaster County determining custody of the parties' minor children on May 26, 2016. On appeal, Garrett argues that the district court erred in awarding Alicia K., the children's biological mother, permanent legal and physical custody of the minor children, allowing Alicia to relocate the children to Missouri,

and erred in the amount of parenting time awarded to Garrett. For the reasons set forth below, we affirm.

## BACKGROUND

The first action between the parties was a paternity action brought by Alicia to obtain a judicial determination of paternity, as well as orders relating to custody, support, and parenting time. On January 23, 2013, the district court entered an order establishing Garrett as the father of the parties' minor child Brayden, born in 2012. The district court entered no orders involving custody or parenting time as Alicia dismissed those causes of action. On March 12, 2014, the State filed a petition in intervention seeking an order of support which led to an order entered by the district court on July 2, 2014, ordering Garrett to pay $133.00 per month in child support for Brayden. On March 5, 2015, Garrett filed a complaint to modify the prior order entered by the district court as to Brayden. Alicia filed an answer and counterclaim for custody of Brayden on April 17, 2015.

On January 23, 2015, the State filed a complaint to establish support as to the parties' youngest child Bryce, born in 2014. Thereafter, Garrett filed an answer and counterclaim for custody. Alicia filed an answer and counterclaim for custody of Bryce on April 17, 2015. On May 5, 2015, the district court entered temporary orders in both cases, awarding Alicia sole legal and physical custody of the children and ordered Garrett to pay child support.

The cases were consolidated by the district court and proceeded to trial as to permanent custody on January 28, 2016. The parties testified at trial, as well as Brayden's therapist, Ann Gray, and Alicia's friend, Carolyn Miller. Documentary evidence was also received.

Garrett and Alicia were never married. They have two minor children together, Brayden and Bryce. The parties began their relationship in 2010. Alicia was attending college at the University of Nebraska-Omaha when the parties first met. In the fall of 2010, Alicia attended the University of Central Missouri (UCM) in Warrensburg, Missouri. Alicia became pregnant with Brayden while she was living in Missouri. Alicia moved to Bellevue, Nebraska to live with her mother after she became pregnant. The parties then moved into an apartment together in June 2012 in Lincoln, Nebraska. The parties lived together until August 2013. After August 2013, the parties lived together intermittently until January 2015. Alicia lived in a few different places after January 2015. At the time of trial she had been residing in Plattsmouth, Nebraska since April 2015.

Garrett and Alicia have had a turbulent relationship, to say the least. There have been over 40 calls made to police involving altercations between them. Alicia filed for a protection order against Garrett in the spring of 2013. Following a domestic incident between the parties, the police arrested Garrett for violation of the protection order. At that time, Garrett was on probation for a felony level drug charge. Due to the violation of the protection order, Garrett's probation was revoked, resulting in his incarceration for a period of time in 2013 and 2014.

The parties have engaged in verbal and physical altercations in front of the children. Due to issues arising during their exchanges of the children, the parties do the exchanges in public in order to alleviate any potential issue between them. Garrett admitted to sending abusive text messages and emails to Alicia during their relationship. Alicia testified that Brayden has developed

behavioral issues as a result of the parties' interactions. Alicia began taking Brayden to a therapist to address these issues.

Since Alicia moved to Plattsmouth, the parties have not been involved in a romantic relationship. At the time of trial, Alicia worked at a Sprint store. Alicia was earning $12.90 per hour plus commission. Garrett owns his own painting business, focusing mainly on exterior house painting. At the time of trial, Garrett was paying a minimal amount of child support to Alicia.

The trial centered on Alicia's request to move the children with her to Missouri in order for her to attend nursing school. After trial, the district court awarded custody of the children to Alicia and permitted her to move to Missouri. We will discuss the facts regarding the removal issue in more detail later in this opinion as they relate to the analytical framework applied.

## ASSIGNMENTS OF ERROR

Garrett argues that the district court erred in (1) awarding Alicia permanent legal and physical custody of the minor children; (2) finding Alicia had a legitimate reason to relocate the children to Missouri and allowing her to relocate there; and (3) awarding him insufficient parenting time.

## STANDARD OF REVIEW

In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012).

## ANALYSIS

First, we note that appellants are required to point out the factual and legal bases that support their assignments of error. *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015). We address only assignments of error both assigned and argued. *Id.* In Garrett's brief, he assigned the three errors stated above, but only argued that the district court's determination that Alicia had a legitimate reason to move the children to Missouri and that removal was in the best interests of the children was error. Therefore, we will only address the district court's decision to permit Alicia to remove the children to Missouri.

The district court found that a strict application of Nebraska's removal jurisprudence as set out in *Farnsworth v. Farnsworth,* 257 Neb. 242, 597 N.W.2d 592 (1999), was not required since no prior adjudication existed as to the custody of the minor children. The court, however, did utilize the analytical framework described in *Farnsworth* in reaching its conclusion as to the children's best interests. The court considered (1) each parent's motives for seeking or opposing the move; (2) the potential that the move holds for enhancing the quality of life for the children and the custodial parent; and (3) the impact such a move will have on contact between the children and the noncustodial parent, when viewed in the light of reasonable parenting time. Imbedded in

its analysis of the parent's motives, the district court made a determination of whether Alicia had a legitimate reason to remove the children to Missouri.

We find no error in the analytical framework applied by the district court. In *Coleman v. Kahler*, 17 Neb. App. 518, 766 N.W.2d 142 (2009), we held that Nebraska's removal jurisprudence does not apply to a child born out of wedlock where there has been no prior adjudication addressing child custody or parenting time. We determined, however, that since removal of a child to another jurisdiction is determined by the children's best interests we could conceive of no good reason why the factors set out in *Farnsworth* could not be properly included in the analytical framework to determine the children's best interests. In *Derby v. Martinez*, 24 Neb. App. 17, 879 N.W.2d 58 (2016), we extended our analysis a step further by addressing the issue of whether an unmarried parent in an initial custody determination had a legitimate reason to remove a child from the state. Accordingly, although the *Farnsworth* factors do not constitute a strict test as applied to the present case, we will give them consideration in reviewing the district court's determination regarding custody and removal of the children from the state.

Under *Farnsworth*, the trial court evaluates three considerations in determining whether removal to another jurisdiction is in the child's best interests: (1) each parent's motives for seeking or opposing the move, (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent, and (3) the impact such a move will have on contact between the child and the noncustodial parent. See *Bird v. Bird*, 22 Neb. App. 334, 853 N.W.2d 16 (2014).

In determining the potential that the removal to another jurisdiction holds for enhancing the quality of life of the child and the parent seeking removal, a court should consider the following factors: (1) the emotional, physical, and developmental needs of the child; (2) the child's opinion or preference as to where to live; (3) the extent to which the relocating parent's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational advantages; (6) the quality of the relationship between the child and each parent; (7) the strength of the child's ties to the present community and extended family there; (8) the likelihood that allowing or denying the move would antagonize hostilities between the two parties; and (9) the living conditions and employment opportunities for the custodial parent, because the best interests of the child are interwoven with the well-being of the custodial parent. See *Farnsworth, supra*.

LEGITIMATE REASON FOR SEEKING MOVE

Alicia's stated reason for seeking to move the children to Missouri is to attend the accelerated nursing program at the University of Central Missouri. Garrett argues that the move is masking the fact that Alicia wants to prevent regular access to his children. We find Alicia's motivations to move the children are legitimate.

While living in Nebraska, Alicia earns approximately $32,000.00 per year working at Sprint. Alicia testified that her hours were not always flexible and that she was struggling to make ends meet. She testified that she was on state-assistance for a period of time. At the time of trial, she lived in a condominium style home that was owned by a family friend.

Alicia testified that she wanted to move to Missouri to complete an accelerated nursing program at UCM. Alicia testified that she would be able to earn her bachelor's of science in nursing

in four semesters, or two years. She had credits from prior courses completed at UCM that would be applicable to her nursing degree. Alicia testified that many of these credits would not transfer to any university or institution in Nebraska. Alicia testified that she would only be required to pay $1,000.00 per semester for in-state tuition at UCM, compared to $4,000.00 per semester for tuition in Nebraska nursing schools. Alicia testified that she was receiving some form of scholarship at UCM. She testified that she had researched the cost and time associated with at least seven universities in Nebraska, and that it would take at least three years to complete any of those programs. Additionally, she testified that she would not be able to afford the cost of out-of-state or private tuition for an additional year of schooling. Alicia testified that after receiving her degrees in nursing and Spanish, her earning capacity would increase to $75,000.00 per year. She testified that she reached this figure by speaking with nurses in the field and by researching salaries on the internet.

We have never required a custodial parent to exhaust all possible job leads locally before securing a better position in another state. Absent some aggravating circumstance, such as an ulterior motive to frustrate the noncustodial parent's visitation rights, significant career enrichment is a legitimate motive in and of itself. See *Farnsworth, supra*. Upon our de novo review, we find the district court did not abuse its discretion in finding that Alicia had a legitimate motivation to move the children to Missouri.

CHILDREN'S BEST INTERESTS

Garrett assigns the district court's awarding of custody to Alicia as error. It appears to us that the best interests argument made by Garrett in his brief primarily address the removal issue. As previously stated, we need not address the issue of Alicia being granted custody in this case. However, even if Garrett's argument were considered an argument for custody, the district court did not abuse its discretion in awarding custody to Alicia. There was ample evidence to support the district court's conclusion that the best interests of the children were served by placing sole custody with Alicia, the primary caregiver to the children for their entire lives. Our de novo review of the record further leads us to conclude that the district court did not abuse its discretion in finding that the children's move to Missouri with Alicia was in their best interests.

The ultimate question in evaluating the parties' motives is whether either party has elected or resisted a removal in an effort to frustrate or manipulate the other party. *McLaughlin v. McLaughlin*, 264 Neb. 232, 647 N.W.2d 577 (2002). In this case, there was no evidence demonstrating that either party had an improper motive with regard to the removal action. The record is clear that Alicia wanted to move the children with her to Missouri in order to obtain her nursing degree in the shortest possible period of time and at the least cost. With that degree would come a higher salary. Garrett obviously has the motivation to spend as much time with his children as possible. However, based upon the district court's division of parenting time on an annual basis, Garrett receives just as much parenting time with the children whether they had been residing in Nebraska or Missouri. We are cognizant of the fact that just because Garrett has designated parenting time, he would still miss out on day to day functions of the children once they are enrolled in school, however, we do not believe that consideration outweighs the countervailing factors.

We must also consider the impact on the children's emotional, physical, and developmental needs in assessing the extent to which the move could enhance their lives. *Hiller v. Hiller*, 23 Neb. App. 768, 876 N.W.2d 685 (2016). Upon our de novo review, we find the evidence demonstrates that Alicia has been the primary caregiver for both children's entire lives. Alicia has made all medical, dental, and therapy appointments for the children. Garrett argues that Alicia has denied him the opportunity to provide for his share of the children's needs. We find this argument lacks support in the evidence.

As discussed above, Alicia has the opportunity to enhance her station in life through a career in nursing. Alicia testified that this would not be possible unless she was allowed to attend the University of Central Missouri. Garrett, on the other hand, has owned his business for over five years and has not made more than minimum wage, after taxes. Additionally, Garrett has not provided any support for his assertion that Alicia could just as easily complete a nursing program in Nebraska.

Alicia testified that she had obtained a townhome in Missouri. This townhome was larger than her residence in Plattsmouth. At the time of trial, Garrett lived with his parents in Lincoln. Garrett testified that when he had overnight parenting time with the children, Bryce slept in a crib in Garrett's bedroom and Brayden slept in a separate bedroom.

At the time of trial, the children had not yet reached school age. Alicia testified that the school district where the children would attend school in Missouri is rated significantly higher than the district in which they live in Nebraska. Additionally, Alicia testified that the children would qualify for a Head Start program in Missouri. Alicia testified that currently, the child care options in Missouri were significantly less expensive than in Nebraska. Garrett did not adduce any evidence to dispute Alicia's testimony regarding the children's educational advantages.

As stated above, Alicia has been the primary caregiver for both children since their birth. The children have lived with Alicia their entire lives. Meanwhile, Garrett has not lived with the children consistently. Whether it was involuntary incarceration, or the parties' inability to co-parent, Garrett has not been a full participant in the more burdensome aspects of parenting. We do note that Garrett has rarely missed his parenting time, and that there is every indication that he loves his children. However, there has not been a demonstration that their move to Missouri would negatively affect their relationship given the significant parenting time he will enjoy.

The district court noted, and Alicia concedes, that she does not have much familial support in either Nebraska or Missouri. Alicia testified that she would have support with her children from members of her church in Missouri. At the time of trial, Alicia's only relatives who participated in taking care of the children were her grandparents. Garrett testified that two of his sisters live near his parent's home, and have children nearly the same age as his children.

As stated above, the parties have had a turbulent relationship. We find that the record demonstrates that distance between the parties would be beneficial for the parties themselves, and may well be beneficial for the children, in part due to the decrease in frequency of contact between the parties.

Nebraska courts have recognized that a noncustodial parent's visitation rights are important, but a reduction in visitation time does not necessarily preclude a custodial parent from relocating for a legitimate reason. *Hiller, supra*. Rather, we focus on the ability of the noncustodial

parent to maintain a meaningful parent-child relationship, and such a relationship is possible even if Brayden and Bryce move to Missouri. See *Maranville v. Dworak*, 17 Neb. App. 245, 758 N.W.2d 70 (2008).

In this case, the total amount of parenting time Garrett was awarded annually by the district court is nearly the same as it had been during the temporary custody order while the children were living in Nebraska. While it is true that Garrett will not have the ability to participate in the day to day activities of his children during Alicia's parenting time, it is clear from the record that the district court was equitable in its award of parenting time to Garrett. While this factor weighs slightly against removal, because it will reduce the amount of in-person weekly contact the children have with Garrett, removal will still allow them to maintain a meaningful relationship.

A de novo review of the evidence shows that the parents were not motivated by an effort on the part of either parent to frustrate the relationship of their children with the other and that the move would enhance the children's quality of life. Though the move has the potential to impact the relationship between Garrett and the children, we find they will still be able to see one another frequently. Garrett and the children will be able to maintain a meaningful relationship despite the distance. The record demonstrates sufficient evidence to support the district court's conclusion that the children's interests are best served by allowing their removal from Nebraska to Missouri.

## CONCLUSION

Upon our de novo review, we find the district court did not err in finding that Alicia had a legitimate reason to remove the children from the State of Nebraska and that the move was in the children's best interests.

AFFIRMED.