759 N.W.2d 914 (2009)
277 Neb. 116
Mehruz KAMAL, Appellee,
v.
Sohel Mohammed IMROZ, Appellant.
No. S-08-491.
Supreme Court of Nebraska.
January 30, 2009.
*915 Adam E. Astley and Virginia A. Albers, of Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., L.L.O., Omaha, for appellant.
Kathleen M. Schmidt, Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
Sohel Mohammed Imroz appeals the decision of the Douglas County District Court, which entered a decree of dissolution ending Imroz' marriage to Mehruz Kamal. The court granted sole legal and physical custody of the couple's minor son to Kamal, with liberal rights of visitation to Imroz. The district court also divided the couple's assets and debt, ordered Imroz to pay child support, and prohibited either party from taking their son out of the United States without written consent of the other. Imroz appeals. We affirm the decision of the district court.

BACKGROUND
Imroz and Kamal were married on May 25, 2003, in Jamaica, New York. The marriage was arranged by the parents of Imroz and Kamal, and the couple was married pursuant to Islamic law. Kamal then moved to Omaha, Nebraska, to live with Imroz. The couple's son was born on July 28, 2004. Kamal moved out of her husband's apartment in December 2004. She subsequently moved in with her parents, who had immigrated to the United States. The parties continued to live separately until July 26, 2006, when Kamal filed for divorce.
At that time, Kamal also filed a motion for an ex parte restraining order and for custody of the child. Kamal made a number of allegations in her request for a restraining order, including an allegation that the child was in physical and emotional danger from Imroz. Kamal further alleged that Imroz frequently became angry and aggressive, that Imroz had withheld information about his baldness and general health prior to the marriage, and that Imroz had not provided for her sufficiently during the course of the marriage.
Kamal further alleged that Imroz locked her in the apartment during the day while he was at work. Kamal alleged that Imroz shook her and that his "arrogant and aggressive" attitude made it impossible for her to deal with him in person. Kamal alleged that Imroz was an Islamic fundamentalist and that he desired to raise their son as such. Kamal testified at the hearing that she was concerned Imroz would take their son to Bangladesh and *916 keep him there and that Imroz had previously taken their son out of the state without telling Kamal or getting her permission.
Imroz denied the allegations. He testified that he gave Kamal a spare set of keys immediately after she moved in to the apartment and that it would be impossible to lock someone inside. Imroz testified that he willingly drove Kamal wherever she wanted to go during the time they had only one vehicle. Imroz also testified that he drove Kamal's parents while they were visiting, and later when they needed to apply for welfare. Imroz also testified that Kamal had made communication regarding their son very difficult because she insisted on communicating only through e-mail.
Imroz testified that he is a practicing Muslim, but that he is respectful of other religions and participates in an interfaith group. Imroz also asked that he be allowed to take his son to Bangladesh to visit the child's great-grandmother. A clinical psychologist, who testified on Imroz' behalf, stated that it was his belief Imroz is a strongly attached father who has a good bond with his son.
The undisputed facts were that Kamal currently worked from home most days and that she had been the primary care-giver for her son since his birth. Kamal is an international student who is currently being sponsored by her mother for the purpose of retaining her student visa. Imroz works full time and is a U.S. citizen. Kamal requested sole custody of their son; Imroz requested that they be given joint custody or, in the alternative, that he be awarded sole custody. The parties both admitted that there had been a great deal of tension over visitation and that as a result, their attorneys had been required to get involved on more than one occasion.
In its decree, the trial court found that both Kamal and Imroz were fit persons to have custody, but that because of the conflict between the parents, joint custody was not in their son's best interests. The court further found that because Kamal had a flexible work schedule and could spend most of her time with their son, she should be awarded sole legal and physical custody with liberal rights of visitation to Imroz. The district court ordered Imroz to pay $815 per month in child support, required Imroz to maintain insurance for the child, and made equitable division of the marital estate. Finally, the district court ordered that Kamal apply to the district court before moving out of the state and required both parties to get the written consent of the other before taking their son out of the country.

ASSIGNMENTS OF ERROR
Imroz contends the district court erred by (1) failing to grant joint custody to the parties, (2) failing to allocate adequate parenting time to Imroz, (3) failing to calculate Imroz' child custody obligation based on a joint custody calculation, and (4) prohibiting Imroz from traveling to Bangladesh with his son.

ANALYSIS

PARENTING ACT DOES NOT REQUIRE JOINT CUSTODY
We first address Imroz' argument that the district court erred when it failed to grant joint custody. Neb.Rev.Stat. § 42-364(3) (Reissue 2008) states that
[c]ustody of a minor child may be placed with both parents on a joint legal custody or joint physical custody basis, or both, (a) when both parents agree to such an arrangement in the parenting plan and the court determines that such an arrangement is in the best interests of the child or (b) if the court specifically *917 finds, after a hearing in open court, that joint physical custody or joint legal custody, or both, is in the best interests of the minor child regardless of any parental agreement or consent.
A parenting plan developed by the court is required to "[a]ssist in developing a restructured family that serves the best interests of the child by accomplishing the parenting functions...."[1] Section 43-2929 lists the determinations the trial court is to make when developing the parenting plan, including legal and physical custody of each child; apportionment of parenting time, visitation, and holidays; location of each child during the week, weekend, and given days during the year; and procedures for making decisions regarding the day-to-day care and control of the child.
Imroz contends that § 43-2929 requires the district court to devise and apply a plan that involves both parents to the maximum amount possible. Imroz' interpretation of § 43-2929 would require the district court to enforce a joint custody agreement or, in the alternative, to grant custody to the parent most likely to foster a relationship with the noncustodial parent. In the present case, Imroz contends that under those guidelines he should be granted primary custody of the child.
The current Parenting Act states:
The best interests of the child require:
(1) A parenting arrangement and parenting plan or other court-ordered arrangement which provides for a child's safety, emotional growth, health, stability, and physical care ...;
....
(3) That the child's families and those serving in parenting roles remain appropriately active and involved in parenting with safe, appropriate, continuing quality contact between children and their families when they have shown the ability to act in the best interests of the child and have shared in the responsibilities of raising the child;
(4) That even when parents have voluntarily negotiated or mutually mediated and agreed upon a parenting plan, the court shall determine whether it is in the best interests of the child for parents to maintain continued communications with each other and to make joint decisions in performing parenting functions as are necessary for the care and healthy development of the child.[2]
(Emphasis supplied.)
In contrast, § 42-364(2) (Reissue 2004), in defining best interests of the child, stated in relevant part that the court
shall consider the best interests of the minor child which shall include, but not be limited to:
(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
(b) The desires and wishes of the minor child if of an age of comprehension, regardless of chronological age, when such desires and wishes are based on sound reasoning;
(c) The general health, welfare, and social behavior of the minor child; and
(d) Credible evidence of abuse inflicted on any family or household member.
[1] A commonsense reading of the revised version of § 42-364,[3] as well as § 43-2923, indicates that the district court still has discretion in determining what the best interests of the child are. The current *918 § 43-2929 mandates that a "parenting plan shall serve the best interests of the child," and the current § 43-2923 mandates that court "shall determine whether it is in the best interests of the child for parents to maintain continued communications with each other." (Emphasis supplied.) In essence, the current §§ 42-364(3) and 43-2923 require the district court to devise a parenting plan and to consider joint legal and physical custody. The statutes do not require the district court to grant equal parenting time or joint custody to the parents if such is not in the child's best interests.
[2] In the present case, the trial judge made a specific finding that Kamal had been the child's primary caregiver and that her flexible work schedule made it possible for her to be with her son nearly full time. The district court also found that because the parents were unable to communicate face-to-face and because there is a level of distrust between the parents, joint decisionmaking by the parents was not in the child's best interests. This decision is consistent with the mandatory statutory language requiring the court to determine whether it is in the best interests of the child for the parents to maintain continued communication.[4] The district court did not fail to apply the standards of the current Parenting Act correctly, nor did it abuse its discretion in its grant of parenting time to Imroz. Imroz' first assigned error is without merit.

DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN GRANTING CUSTODY TO KAMAL
[3-5] Imroz next argues that Kamal has been uncooperative in allowing visitation and therefore he should be granted sole custody because he is more likely to foster a meaningful relationship with the noncustodial parent. While we review child custody determinations de novo on the record, the trial court's decision will normally be upheld absent an abuse of discretion.[5] As we have recognized above, the current Parenting Act differs very little from the previous statutory scheme, and therefore case law addressing a change in custody is still generally applicable. The fact that one parent might interfere with the other's relationship with the child is a factor the trial court may consider in granting custody, but it is not a determinative factor.[6] And while interference with the other parent's visitation rights can arise to a material change in circumstances sufficient to alter a parenting plan, there is no indication at present that Kamal will ignore the trial court's order.[7] We find the district court did not abuse its discretion in granting custody to Kamal.
The same principles apply to Imroz' contention that the district court did not award him adequate parenting time. The parenting plan grants Imroz visitation every other weekend, every Wednesday from 6 p.m. to Thursday at 6 p.m., and 10 consecutive days in the summer. The district court also outlined the visitation schedule for holidays. The district court made it clear that the division of parenting time between the parties was devised in the best interests of the child.
Because we find that the district court did not commit an abuse of discretion in its *919 division of parenting time, we affirm the order of the district court. Imroz' assignment of error as to parenting time is without merit. We are therefore not required to address the issue of child support, as Imroz admitted that the district court's findings as to child support were correct if custody remained with Kamal.

DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT RESTRICTED PARTIES' ABILITY TO REMOVE CHILD FROM COUNTRY
[6] Imroz finally argues that the district court erred when it restricted his ability to travel with his child outside of the country. In its order, the district court forbade both parties from taking the child out of the country without written permission from the other parent. Imroz stated that he wishes to take his child to Bangladesh to visit family, specifically the child's great-grandmother.
The only finding the district court made with respect to its order that Imroz not take his child out of the country without Kamal's written permission was that Kamal feared Imroz would take the child to Bangladesh and not return. Kamal's fear was supported by the fact that Imroz once took the child out of the state without informing her.
The prohibition is not absolute, however, and Kamal expressed her willingness to allow the child to travel outside the country when he is a little older. We cannot say the trial court abused its discretion in this matter. Imroz' final assignment of error is also without merit.

CONCLUSION
We find that the district court correctly interpreted the standards of the current Parenting Act. We also find that the district court did not abuse its discretion when devising the parenting plan and by granting custody of the parties' child to Kamal. Nor did the court abuse its discretion by restricting either party from taking the child out of the country without the written consent from the other parent. We therefore affirm the district court's order.
AFFIRMED.
NOTES
[1] Neb.Rev.Stat. § 43-2929(1)(a) (Reissue 2008).
[2] Neb.Rev.Stat. § 43-2923 (Reissue 2008).
[3] § 42-364 (Reissue 2008).
[4] See, also, Coffey v. Coffey, 11 Neb.App. 788, 661 N.W.2d 327 (2003).
[5] Maska v. Maska, 274 Neb. 629, 742 N.W.2d 492 (2007).
[6] Id.
[7] See, Hibbard v. Hibbard, 230 Neb. 364, 431 N.W.2d 637 (1988); Coffey, supra note 4.