IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE ON BEHALF OF JACOBSON V. JACOBS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA ON BEHALF OF STACI JACOBSON, APPELLEE,

V.

JESSE T. JACOBS, APPELLANT.


Filed December 12, 2017.    No. A-16-1171.


Appeal from the District Court for Buffalo County: JOHN M. MARSH, Judge. Affirmed as modified.

Kent A. Schroeder and Mary Rose Richter, of Ross, Schroeder & George, L.L.C., for appellant.

Aaron M. Bishop, of Bishop Law, for appellee.


MOORE, Chief Judge, and INBODY and BISHOP, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Jesse T. Jacobs appeals from an order of the district court for Buffalo County, Nebraska, which denied his application to modify custody and parenting time of his son Brett. We affirm the district court's denial of Jesse's application to modify custody, but we modify the order to afford Jesse additional parenting time as set forth below.

## II. BACKGROUND

Jesse and Staci Jacobson were friends who had one intimate encounter in 2005. In July of 2006, Staci gave birth to Brett. During her pregnancy, Jesse asked Staci whether he was the child's father, which Staci denied. Several months after Brett's birth, Jesse took a paternity test the results

- 1 -

of which confirmed he was Brett's father. Jesse and Staci immediately made arrangements to include Jesse in Brett's life. Soon thereafter, Jesse graduated from the University of Nebraska-Kearney and moved to Omaha. Over the next few years, Jesse and Staci were able to informally agree on a parenting arrangement, which gave Jesse parenting time with Brett every other weekend. Jesse and Staci entered into a parenting plan in 2009 that gave Staci legal and physical custody. The plan gave Jesse parenting time every other weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on Sunday. Additionally, the plan provided that after Brett's kindergarten year, Jesse would be granted six weeks of parenting time during the summer. The court approved the plan in an order entered on July 23, 2009. In the winter of 2010, Jesse moved back to Kearney so he could develop a better relationship with his son. Thereafter, Staci voluntarily allowed Jesse to have parenting time beyond that which was contained in the 2009 parenting plan.

On May 22, 2015, Staci filed a complaint for modification of parenting time and child support. She alleged a material change in circumstances which had a direct and substantial impact on Brett's best interests. She claimed that Jesse did not acknowledge the importance of Brett's participation in academic activities, particularly during the summer months. Further, she alleged that Jesse was residing with his girlfriend, who has a minor child. Staci claimed this minor child had a negative impact on Brett. She argued these factors together warranted a change in the parenting plan. Staci also sought modification of child support. Staci filed a request to have a clinical psychologist perform a custody evaluation. Jesse filed an answer and counterclaim requesting a change in custody and also alleging there had been a material change in circumstances. At trial, Jesse altered his claim. In place of sole custody, he requested joint physical custody or, alternatively, modified parenting time.

In June of 2015, the district court entered orders on temporary matters. Because the parties could not resolve the 2015 summer parenting time schedule, the court set the summer schedule. The court also approved Staci's request to have a clinical psychologist perform a custody evaluation. Finally, the court modified Jesse's child support beginning July 1, increasing his support obligation from $500 per month to $610 per month, and modifying the prior order to require Staci to maintain health insurance for Brett.

Trial occurred on October 3, 2016. The parties produced evidence about the parties' circumstances between 2009 and the time of trial. When the court entered the 2009 custody order entered, Jesse was single and lived in Omaha--nearly a three hour drive from where Brett lived with his mother. Jesse had a drinking habit that resulted in some minor legal trouble. He worked as a salesman for a trucking company, which placed extensive demands on his time. Although Jesse was interested in spending time with his son, he did not exercise the minimum parenting time available to him. Because Staci wanted Brett to have significant contact with his father and his father's family, she encouraged Jesse's contact with Brett and allowed Brett to spend time with his paternal grandparents during her parenting time.

After Jesse moved back to Kearney in 2010, Staci informally agreed to increase Jesse's parenting time to include every Sunday afternoon in addition to his parenting time every other weekend. In the spring of 2012, Staci also agreed to allow Jesse to spend Wednesday nights with Brett and to allow Brett to join Cub Scouts, which met on Tuesday nights. Jesse became a Cub Scout leader to spend additional time with Brett on Tuesday nights. Jesse and Staci also orally

agreed to modify the weekend visitations by having them begin on Fridays after school and ending on Sundays at 7:30 p.m. In addition, the parties agreed in 2013 and 2014 that Jesse would have Brett for the bulk of summer, subject to Staci's parenting time every other weekend and Wednesday evenings.

At the time of trial, Staci had lived in the same Kearney residence for six years. While her boyfriend, Blake, has resided with her for five years, they have no plans to marry. Staci is employed at the University of Nebraska-Kearney in the registrar's office. Staci's testimony generally confirmed that prior to the modification proceedings, she and Jesse were able to communicate well and work out parenting time arrangements. Jesse was involved in Brett's life, and Staci allowed Jesse to have more parenting time than specified in their parenting plan.

In 2013, Jesse moved in with his girlfriend, Kady, and her son, Dominic, who is approximately two years older than Brett. When Brett and Dominic first spent significant time together, they had some adjustment issues. And although Brett continued to thrive academically, he began to demonstrate behavior problems in school, including disruptive classroom behavior, talking back to his teachers, difficulty sitting still in class, and drawing attention to himself in negative ways. Staci attributed Brett's classroom conduct to his contact with Dominic. As a result, Staci stopped allowing Brett to spend time with his father on Wednesday and Sunday nights and pulled Brett out of Cub Scouts on Tuesday nights. Staci also refused to allow Jesse to have parenting time for the bulk of the summer of 2015 as had occurred the prior two summers.

During the spring semester of Brett's second grade year in 2015, Brett began exhibiting these behavior problems at school. Both Staci and Jesse participated in Student Assistance Team (SAT) meetings with school personnel to address strategies to address Brett's behavioral issues. The school counselor testified that both parents were responsive in their interactions with her and Brett's behavior improved at school. Because Staci had concerns about Brett's relationship with Dominic, she arranged for Brett to see a private counselor. She also began refusing to allow Brett to spend time with his father that was not specifically enumerated in their parenting plan.

In addition to the concern regarding Brett's behavior and his relationship with Dominic, Jesse and Staci also disagreed over Brett's 2015 summer child care arrangements, leading Staci to file the modification complaint. Staci had previously enrolled Brett in the Kearney Community Learning Center (KCLC), an after-school program that provides homework assistance, healthy snacks, physical activities, and optional clubs. KCLC also offers an eight-week summer program, which contains an educational component as well as day camp activities. Jesse preferred to employ a private sitter while Brett was with him in the summer. Brett did attend the KCLC program in the summer of 2015. Staci testified that Brett had fewer difficulties re-adjusting to school at the beginning of his third grade year in the fall of 2015.

The director of KCLC testified that both Jesse and Staci were responsive to her and she had no concerns about either of their parenting. Brett's third grade teacher, who was also his fourth grade teacher, testified. She indicated generally that Brett does well in school and is a strong reader. Brett continues to exhibit some behaviors at school to get attention in negative ways. The teacher did not notice that the behaviors occurred more on any particular day or time of the school year. She testified that both parents were responsive to her, communicated with her by e-mail, and attended parent-teacher conferences.

Staci testified that she and Jesse communicate well. In addition, Staci and Kady have a good relationship, and they "can communicate back and forth very easily." Jesse and Staci were able to agree about Jesse's 2016 summer parenting time. Brett attended KCLC during part of the summer and also had a private sitter during part of Jesse's parenting time. Brett participated in baseball, theater camp, swimming lessons, and art class. Jesse and Staci were able to discuss these events and schedule their parenting times around them. Staci expressed concern about Brett not finishing his homework when at Jesse's home during the school year. Staci testified that she is the parent who arranges Brett's activities and medical appointments.

At the time of trial, Jesse lived within walking distance of Staci and Brett. Jesse and Kady married in the summer of 2015, and they were expecting a child in November. Dominic resides with Jesse and Kady. Jesse is self-employed in a cable locating business and often works from home, which gives him significant flexibility in taking care of the children. Jesse has developed a strong relationship with Brett and is very active in Brett's life. Jesse attends parent-teacher conferences at Brett's school. Jesse supports Brett's attendance at KCLC during the school year but feels "he needs to get out of the classroom environment and enjoy being a kid" during the summer. His summer daycare provider is a stay-at-home mom who lives next door to him. Her husband is a professor and chair of the education department at the University of Nebraska-Kearney. Jesse testified that Brett's relationship with Dominic is "greatly improving." Each boy tells the other "I love you," and they give each other hugs. Jesse testified that Staci is a very loving mother, who is both well-organized and active in Brett's life. Jesse admitted he is less structured than Staci. Jesse testified that he would like to share custody of Brett because he wants to be as big a part of his life as possible. Jesse proposed alternating physical custody on a weekly basis, with each having parenting time on Wednesday evenings when Brett is in the care of the other parent.

Dr. John Meidlinger, a licensed clinical psychologist, testified at trial. As a part of his custody evaluation in this case, Meidlinger interviewed Brett, Jesse, Staci, Kady, Blake, and Dominic. Meidlinger had an opportunity to observe each parent with Brett. Meidlinger also conducted telephone interviews with the references the parents provided and reviewed collateral documents. Meidlinger spoke with Brett's teacher and principal. They indicated that Jesse was an involved parent and that he worked with the school to get Brett to complete his homework and improve his behavior in the classroom.

Meidlinger testified that "my own bias would be for Brett to change households on a weekly basis, but that is not what Brett is asking for nor is it what [Jesse] is asking for." He felt that weekly transitions would maximize both parent's parenting time while minimizing the parent's conflicts and reducing the number of confusing transitions for Brett. However, Meidlinger indicated that he was not inclined to recommend alternating weeks between parents if Brett is not asking for that specifically--although he "wouldn't argue against it if the Court made that decision." Meidlinger testified that Brett wanted to be at his father's home "a little more often" and maybe some time every weekend. Brett liked the idea of having overnight visits with Jesse on Wednesday and Sunday. When Meidlinger asked Brett about spending alternating weeks between his parents, Brett said that might be possible because the homes are close together. Brett speculated that he and Dominic might get along better if they had more time together. According to

- 4 -

Meidlinger, Brett "thought alternating weeks might be okay but preferred the idea of two overnights a week and continuing to spend time with his mother."

Meidlinger ultimately recommended that it would be in Brett's best interest for Jesse's parenting time to continue with every other weekend, every other holiday, half of the summer, and two overnights each week. Meidlinger believed that Brett spending more time with Dominic would have a positive impact on their ability to get along.

Staci proposed a modified parenting plan that extended Jesse's weekend visitation to include overnight on Sunday, Christmas Day every year, and a week at spring break. However, her proposal reduced Jesse's summer parenting time by two weeks in order to attend KCLC. Staci testified that her proposal ultimately allowed Jesse more parenting time with Brett. However, Staci also testified that she was not asking the court to make any changes to the parenting plan because she felt there had not been a material change in circumstances. She indicated her proposal was only in response to Meidlinger's recommendation.

On October 26, 2016, the district court entered an order, finding that neither parent had met their burden of proving a material change in circumstances with regard to custody and parenting time, with the exception that the parties have been unable to agree on Jesse's six weeks of summer parenting time. The court ordered that in the event the parties cannot agree, Jesse's summer parenting time begins on the Sunday seven weeks prior to the beginning of the school year. The court indicated that during Jesse's parenting time, he will have the discretion to determine child care or education arrangements in the best interest of the child. The court adopted the $610 per month child support calculation it entered in its June 2015 order. The court further determined that each party should be responsible for their own attorney fees and ordered Jesse to reimburse Staci for one-half of the cost of the custody evaluation.

Jesse filed a motion for new trial or in the alternative to alter or amend the order. In its order overruling the motion, the court stated:

> The Court finds that a material change in circumstances is still the appropriate standard. While best interest of the child is always paramount, stability of the child's placement is important for a child's best interests. The material change in circumstances standard is one of the safeguards against constant re-litigation of a parenting plan which would not be in a child's best interest. The Court further believes that if the Parenting Act eliminated that long-standing doctrine, the Legislature would have been explicit in doing so. The Court considered [Jesse's] change in residence, the minor child's wishes to spend more time with his father, findings under the totality of the circumstances, there is no material change in circumstances.

Jesse timely filed this appeal.

## III. ASSIGNMENTS OF ERROR

Jesse assigns, consolidated and restated, that the district court erred in (1) concluding there had not been a material change in circumstances to warrant a modification of custody, and (2) concluding that Jesse's current parenting time was in the child's best interest.

## IV. STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *State on behalf of Natalya B. v. Bishop A.*, 24 Neb. App. 477, 891 N.W.2d 685 (2017).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. *Bergmeier v. Bergmeier*, 296 Neb. 440, 894 N.W.2d 266 (2017). Where credible evidence is in conflict in a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *State on behalf of Lockwood v. Laue*, 24 Neb. App. 909, 900 N.W.2d 582 (2017).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*.

## V. ANALYSIS

Jesse challenges the trial court's order denying his request to modify the prior order to award him joint physical custody of Brett. Alternatively, he challenges the denial of his request to modify his parenting time. The trial court found that because there was no material change of circumstances, Jesse was not entitled to relief, with the exception of further defining the start of summer parenting time.

### 1. MODIFICATION OF CUSTODY

Jesse assigns that the district court erred in concluding there had not been a material change in circumstances to warrant a modification of custody. Although we differ in our analysis, we ultimately conclude that the district court did not abuse its discretion in failing to modify custody.

The legal principles governing the modification of child custody are well settled. A court will not modify custody unless there has been a material change in circumstances showing either that the custodial parent is unfit *or* that the best interest of the child require such action. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). The party seeking modification must first show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). After establishing a material change in circumstances, the party seeking modification must show a modification of custody is in the child's best interest. *Id*. Material change in circumstances, warranting modification of child custody, means the occurrence of something which, had it been known to the dissolution of marriage court at the time of the initial decree, would have persuaded the court to decree differently. *Floerchinger v. Floerchinger*, 24 Neb. App. 120, 883 N.W.2d 419 (2016).

### (a) Material Change in Circumstances

Our review of the record leads us to conclude that there has been a material change in circumstances since the entry of the 2009 order. At the time of that order, Jesse resided in Omaha and had limited contact with Brett who lived with Staci in Kearney. However, Jesse returned to Kearney in 2010 and increased his involvement in Brett's life to the point that he had substantial parenting time with Brett, well beyond that provided in the 2009 parenting plan and order. Prior to the disagreement between the parties that led Staci to file the modification action, Jesse had parenting time every other weekend, Tuesday, Wednesday, and Sunday evenings every week, and the bulk of the summer in 2013 and 2014. Jesse lives near Staci and Brett and is involved in Brett's education and activities. He is self-employed with flexibility in his schedule to parent Brett. He is married, has a stepson, and had a child on the way at the time of trial. Jesse and Brett have developed a close relationship. Despite their disagreement over summer parenting time and daycare, Jesse and Staci are able to communicate effectively as necessary to co-parent Brett. As such, there has clearly been a change in circumstances since the previous order that affects Brett's best interests.

### (b) Best Interests

Before a court may modify custody based upon a material change in circumstances, the party seeking modification must show that the modification is in the best interests of the child. *Schrag v. Spear*, *supra*. We conclude that Jesse has failed to prove this necessary prong to effectuate a change in custody.

Neb. Rev. Stat. § 43-2923 (Reissue 2016), requires:

> (1) A parenting arrangement and parenting plan or other court-ordered arrangement which provides for a child's safety, emotional growth, health, stability, and physical care and regular care and continuous school attendance and progress for school-age children;
>
> . . . .
>
> (3) That the child's family and those serving in parenting roles remain appropriately active and involved in parenting with safe, appropriate, continuing quality contact between children and their families when they have shown the ability to act in the best interests of the child and have shared in the responsibilities of raising the child;
>
> . . . .
>
> (5) That certain principles provide a basis upon which . . . negotiation and mediation of parenting plans are conducted. Such principles shall include . . . [t]o minimize the potentially negative impact of parental conflict on children; . . . to ensure that the child's voice is heard and considered in parenting decisions; . . .
>
> (6) In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and:
>
> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child[.]

In addition to these factors, the Nebraska Supreme Court has held that in determining a child's best interests, courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension--regardless of chronological age--and when such child's preference for custody is based on sound reasons; and the general health, welfare, and social behavior of the child. *Davidson v. Davidson*, 154 Neb. 347, 576 N.W.2d 779 (1998).

The record shows that Staci has been the primary custodial parent since Brett's birth. Staci is very active in Brett's development and education and is clearly a loving parent who provides a stable, nurturing environment. Staci has encouraged the relationship between Jesse and Brett, recognizing the importance of the father-son relationship. Staci took corrective action to address Brett's behavioral issues at school and to help him address issues relating to his relationship with his stepbrother.

Moreover, Meidlinger did not recommend a joint custody arrangement whereby Brett would spend alternating weeks with his parents. Although Meidlinger was generally in support of this type of joint custody arrangement to eliminate conflict, he acknowledged that neither Brett nor Jesse was asking for such an arrangement at the time of his evaluation. Brett expressed a desire to spend "a little more" time with his father. And it wasn't until trial, several months after the evaluation, that Jesse changed his request to joint physical custody.

Jesse asserts that the Legislature's adoption of the Nebraska Parenting Act in 2007 created a presumption of joint physical custody. We disagree. Jesse cites the Parenting Act's legislative findings found in Neb. Rev. Stat. § 43-2921, which provide, in relevant part, as follows:

In any proceeding involving a child, the best interest of the child shall be the standard by which the court adjudicates and establishes the individual responsibilities, including consideration in any custody, parenting time, visitation, or other access determinations as well as resolution of conflicts affecting each child. The State presumes the critical importance of the parent-child relationship in the welfare and development of the child and that the relationship between the child and each parent should be equally considered unless it is contrary to the best interest of the child.

Jesse reasons that if the State presumes the critical importance of the parent-child relationship, the courts should similarly employ a presumption in favor of awarding joint physical custody. While the language above stresses the importance of maximizing time with each parent to be in a child's best interest, it does not create a presumption in favor of awarding joint physical

custody. We found no Nebraska appellate cases adopting a presumption of joint custody nor has Jesse cited any such cases. In fact, the Nebraska Supreme Court has recognized that Nebraska statutes do not require a district court to grant equal parenting time if such is not in the child's best interests. See *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009). We agree with the district court that if the Legislature intended to depart from the current custody jurisprudence by creating a presumption in favor of joint physical custody, "it would have been explicit in doing so."

We conclude in our de novo review that Jesse failed to prove that modification of custody was in Brett's best interests. As such, we find no abuse of discretion by the district court in denying this portion of Jesse's counterclaim.

## 2. MODIFICATION OF PARENTING TIME

Jesse argues that the district court erred in denying Jesse's request for modification of the parenting time contained in the 2009 order.

### (a) Material Change in Circumstances

The same principles regarding material change in circumstances set forth above relating to custody apply in proceedings to modify parenting time. See, *State on behalf of Natalya B. v. Bishop A.*, 24 Neb. App. 477, 891 N.W.2d 685 (2017). For the same reasons cited above, we conclude that Jesse sustained his burden of proving a material change in circumstances since the 2009 order as it relates to parenting time.

### (b) Best Interests

As a result of the change in circumstances since Jesse moved back to Kearney in 2010, Jesse and Brett have enjoyed a close relationship, which Staci has fostered. Staci determined that it was in Brett's best interest to allow for additional parenting time beyond the time provided in the 2009 order. She allowed the additional parenting time, in increasing increments, for approximately five years until sometime in 2015 when she perceived that Brett was experiencing problems relating to the presence of Jesse's stepson, Dominic, in the home.

The record shows that both Jesse and Staci have been responsive in addressing Brett's behavioral issues at school and in helping him develop a more positive relationship with Dominic. The evidence reveals that the actions of the parents have positively impacted both of these areas of concern. Brett is doing well in school, and the parties continue to be responsive to addressing any continuing behavior issues at school. In addition to these areas of concern, the parties disagreed about child care arrangements during the summer of 2015, which caused Staci to disallow additional summer parenting time beyond the six weeks provided in the prior order. The parties were able to reach a voluntary agreement for the summer of 2016.

In sum, the parties have addressed and resolved the primary areas of dispute that lead to this modification proceeding. To return to the prior practice of allowing additional parenting time between Jesse and Brett since 2010 would, at least in part, continue to be in Brett's best interest. Meidlinger testified that it would be in Brett's best interest to have additional parenting time with Jesse, specifically, two additional overnights each week. In response to Meidlinger's recommendation, Staci proposed a parenting plan which included Sunday overnight on Jesse's

alternating weekends. Staci's proposal also included a week at spring break, but reduced Jesse's summer parenting time to four weeks.

We conclude that the district court abused its discretion in failing to find that it would be in Brett's best interest to modify Jesse's parenting time. In addition to the parenting time contained in the 2009 parenting plan and order, we find that Jesse should be awarded Sunday overnight on his alternating weekends so that his weekend parenting time begins at 6:00 p.m. on Friday and concludes at 8:00 a.m. on Monday. In addition, Jesse should be awarded parenting time every Wednesday from after school, or 5:00 p.m. during summer and school breaks, until 8:00 p.m. The balance of the parenting time provisions remain as previously ordered in 2009, along with the district court's specification of the start of Jesse's summer parenting time each year if the parties cannot agree.

It is clear in this case that we have two loving, involved parents. Brett has enjoyed a close relationship with each parent that the other parent has fostered. We encourage Jesse and Staci to continue to work together in addressing Brett's best interests.

## VI. CONCLUSION

The district court did not abuse its discretion when it denied Jesse's application for modification of custody. We affirm that portion of the order. But we find that the court abused its discretion when it failed to find that increased parenting time with Jesse would be in Brett's best interests. We modify that portion of the order to award increased parenting time for Jesse as set forth above.

AFFIRMED AS MODIFIED.