IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SLOUP V. THOMAS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MEGGIE M. SLOUP, APPELLEE,

V.

WILLIAM SCOTT THOMAS, APPELLANT.

Filed June 4, 2019.    No. A-18-596.

Appeal from the District Court for Saunders County: ROBERT R. STEINKE, Judge. Affirmed in part, and in part reversed.

Adam R. Little, of Ballew Hazen, P.C., L.L.O., for appellant.

Benjamin W. Shanahan, of Sohl Law Office, for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

RIEDMANN, Judge.

### INTRODUCTION

William Scott Thomas appeals the decision of the district court for Saunders County denying his request to modify custody of his minor children. Thomas specifically appeals the district court's order denying him sole physical custody of the children, granting Meggie M. Sloup sole legal custody of the children, and reducing his parenting time with the children. We determine that the district court did not abuse its discretion in denying Thomas' request for physical custody of the children and in awarding Sloup sole legal custody of the children; however, we reverse the district court's decision to reduce Thomas' parenting time.

### BACKGROUND

Thomas and Sloup are the biological parents of three minor children, twin boys born in 2011, and a daughter, born in 2013. Thomas and Sloup were never married. In November 2014,

the couple separated and entered into a joint stipulation to establish paternity, custody, and support. Pursuant to that stipulation, the parties agreed to a parenting plan establishing that Sloup would have sole physical custody of the children and the parents would have joint legal custody, but Sloup would have the final say on all decisions if there was an impasse. The parenting plan also established that from November 2 until April 14, and June 2 until September 14, Thomas would have parenting time with the children every other weekend from Thursday at noon (or after school) until Monday at 8 a.m. But from April 15 to June 1, and again from September 15 to November 1, Thomas would have parenting time every other weekend from Saturday at 5 p.m., until Sunday at 8 p.m. Under both schedules Thomas was allowed parenting time on Thursdays from noon (or after school) until 8:30 p.m. during the weeks in which he did not have weekend parenting time. Additionally, Thomas was granted 2 nonconsecutive weeks of summer parenting time and certain holiday time. The court entered an order consistent with the parties' stipulation.

In May 2016, Sloup filed a contempt motion, alleging that Thomas was not paying his share of daycare expenses, was returning the children's clothing unwashed, did not notify her when he took the children outside of Nebraska, and did not return the children at the end of his parenting time. In August, Thomas filed an application for modification of the parenting plan. He alleged that a material change of circumstance had occurred since the plan was agreed upon, namely: that Sloup was not acting in the best interests of the minor children, refused to discuss major decisions involving the health and welfare of the minor children, did not keep a constant schedule and placement of the minor children, placed the boys in kindergarten before they were ready, was not addressing her health concerns, and that the children wanted to spend more time with Thomas. He alleged that it was in the children's best interests that he be awarded sole legal and physical custody. Thomas additionally filed a contempt motion, alleging that Sloup returned the children's clothing unwashed, did not notify him of the children's medical appointments, and took the children out of Nebraska without notifying him.

In response, Sloup filed a cross-complaint for modification of the parenting plan. She asserted that a material change in circumstances had occurred in that Thomas refused to respect her boundaries and the parties were unable to effectively communicate regarding the children. Sloup requested sole legal custody of the children, modification of Thomas' parenting time, and an increase in child support. The district court held a hearing spanning 3 days in July and December 2017 on the parties' requests for modification and contempt, and held another telephonic hearing in February 2018.

At the hearing, the parties admitted that they had not been strictly adhering to the parenting plan; rather, Thomas was exercising parenting time regularly under the first provision with the children staying with him every other Thursday afternoon to Monday morning. Each parent attempted to demonstrate that the other was unfit and did not act in the children's best interests. Thomas adduced testimony from Sloup and other witnesses showing that Sloup enrolled the boys in kindergarten despite the boys' preschool teacher indicating that they were not ready for kindergarten. The boys were initially enrolled at a private school, but left after a short time to attend a public school. The boys had to repeat kindergarten. Thomas attempted to demonstrate that Sloup's decision to enroll the boys in kindergarten was indicative of her poor decisionmaking as the parent who had final say on all decisions affecting the children's best interests; however, Sloup

testified that she thought it was beneficial for the boys to begin kindergarten, even though they had to repeat it.

Thomas also indicated that Sloup did not notify him of the children's doctor's appointments or when their medications changed, and did not include him in her decision to enroll the children at various daycare facilities. Thomas elicited testimony from the children's nanny that on two separate occasions she arrived at Sloup's house and Sloup was not responsive and had low blood sugar due to her diabetes. Sloup denied the assertion and testified that she was never unresponsive when the nanny arrived. Thomas also attempted to show that the children were not safe while in Sloup's care because their daughter suffered a hairline fracture of her wrist either at daycare or at Sloup's house, and Sloup did not seek medical attention for her.

Thomas testified regarding numerous doctor appointments of which Sloup did not inform him, including hernia surgery for one of the boys. Thomas also stated that when Sloup took the children out of the state for a vacation she only informed him the day of the trip that she was taking them "south." Thomas indicated that he did not believe the children should spend 10 or 11 hours a day at daycare, school, or an after-school program, which they did while Sloup was at work due to her commute. Additionally, Thomas testified that on one occasion Sloup told him to "play in traffic," which he understood to mean that he should kill himself, and on another occasion, Sloup told the children that he should inhale poisonous gas.

Prior to the hearing, Thomas hired a private investigator to investigate and report on the safety and status of the children while in Sloup's care. The private investigator stated that he was hired because Thomas was concerned with Sloup's driving habits and the dangers associated with her driving. The investigator stated that he initially intended to follow Sloup's vehicle but she drove too fast for him to keep up, so he placed a global positioning system (GPS) device on her vehicle. Thomas was hesitant about using the GPS device, but eventually agreed to it. The GPS device informed the investigator that Sloup drove in excess of the speed limit every time she operated the vehicle; however, Sloup stated that she never received a speeding ticket. After approximately 6 weeks of use, Sloup discovered the GPS device and reported it to law enforcement.

Sloup testified, either as a witness called by Thomas or in her case-in-chief, regarding the difficulty she had in communicating with Thomas. She testified that she stopped notifying Thomas of doctor's appointments because when she did notify him, he would respond with a rude or derogatory comment. She also indicated that she informed Thomas of the various preschool providers she was considering, and invited him to attend interviews with them, but he refused to attend or discuss the decision because he did not think the children should attend preschool. Sloup also testified regarding a text message she received from Thomas in which he called her derogatory names.

Sloup stated that Thomas was often behind on paying his share of the children's daycare fees, and he indicated that he did not believe he should pay because he did not agree with her decision to send the children to daycare. Additionally, Thomas often picked up the children from preschool before his parenting time was scheduled to begin, and failed to timely return them. Sloup indicated that she did not believe the children were safe at Thomas' house due to their close proximity to bulls and cows, and because Thomas allowed them on or near farm machinery. Sloup

testified that she was concerned with Thomas' approach to racial diversity and feared that his racial views were being passed to the children.

Following the hearing, the district court denied Thomas' request for sole physical and legal custody of the children. The district court determined that, while neither Thomas nor Sloup were perfect parents, they both loved the children and wanted to do what was right for them. The district court concluded that Thomas failed to demonstrate that a material change of circumstances had occurred since the parenting plan was agreed upon such that the court could grant the relief he requested.

The court did find, however, that Sloup established that a material change of circumstances occurred, in that the parties were unable to communicate with one another as mature adults. The court further found that it was in the best interests of the children to grant Sloup sole legal custody of the children, and modified Thomas' parenting time to every other weekend from Friday at 5 p.m. until Sunday at 6 p.m. and every Wednesday from 5 p.m. until 7:30 p.m. Thomas was also granted 4 weeks of summer parenting time, to be exercised in 2 blocks of 2 weeks each, separated by 2 weeks (increasing his summer parenting time by 2 weeks). His holiday time was to continue as before.

The court denied Sloup's request for additional child support because there was not a 10-percent or more upward variation in Thomas' current obligation. The court determined that although both parties were in contempt of court for failing to abide by the parenting plan, each had purged themselves of contempt by virtue of their subsequent behavior. Finally, the court awarded Sloup $10,000 in attorney fees to be paid by Thomas. Thomas timely appealed.

## ASSIGNMENTS OF ERROR

Thomas argues on appeal, renumbered and restated, that the district court abused its discretion in (1) declining to modify physical custody of the children and grant him sole physical custody, (2) modifying joint legal custody of the children to award Sloup sole legal custody, and (3) reducing his parenting time to four overnight visits per month.

## STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Parenting time determinations are also matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. See *Aguilar v. Schulte*, 22 Neb. App. 80, 848 N.W.2d 644 (2014).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason and evidence. *Schrag v. Spear, supra*. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*.

## ANALYSIS

*Refusal of Sole Physical Custody to Thomas.*

Thomas argues that the district court abused its discretion by failing to award him sole physical custody of the children. We disagree.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Schrag v. Spear, supra*. A material change in circumstances means the occurrence of something which, had it been known to the court at the time of the initial decree, would have persuaded the court to decree differently. *Id*. The party seeking modification of child custody bears the burden of showing a change in circumstances. *Id*.

Here, the district court determined that Thomas did not establish that a material change of circumstances had occurred since the initial parenting plan was instituted. In its order the court recognized that Thomas alleged a material change in circumstances had occurred in that Sloup was not acting in the best interests of the children, refused to discuss major decisions involving the health and welfare of the minor children, did not keep a constant schedule and placement of the minor children, placed the boys in kindergarten despite recommendations that they were not ready, was not addressing her health concerns, and that the minor children wanted to spend more time with Thomas. The district court noted that "[Sloup] is not a perfect parent; neither is [Thomas]." The court then found that there was not a material change in circumstances such that a change of physical custody was warranted.

After reviewing the record, we find that the district court did not abuse its discretion in determining that Thomas failed to demonstrate that a material change of circumstances had occurred showing that Sloup is unfit or that the best interests of the children require modification of the children's physical custody. While Thomas did not agree with Sloup's decision to enroll the boys in kindergarten, and preferred that the children remain with him and not in daycare, Sloup's decision to the contrary does not make her unfit. Although the boys repeated kindergarten, Sloup testified to the benefits she saw from the social interaction they received in kindergarten. As to the long hours in daycare, by the December 2017 hearing, Sloup had obtained employment in the Wahoo school district as a licensed practical nurse and was working hours more aligned with the children's school day, thus alleviating much need for daycare.

As to her health issues, Sloup testified that she actively managed her diabetes, and was not unresponsive due to the disease at any time, contradicting Thomas' argument that her unmanaged health issues created a material change of circumstances. Further, Sloup testified that when she would try and discuss the children's medical issues or educational needs with Thomas she was often met with rude comments or Thomas was difficult to deal with.

The record refutes the assertion that any one of the reasons offered by Thomas constitutes a material change in circumstances showing that Sloup is unfit or that the best interests of the children require a change in custody. Therefore, the district court did not abuse its discretion in denying Thomas' request for modification of physical custody.

*Award of Sole Legal Custody to Sloup.*

Thomas also argues that the district court abused its discretion in awarding Sloup sole legal custody of the children. We disagree.

As indicated above, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Appellate review of joint legal custody issues has often focused on the parties' ability to communicate. See, *State on behalf of Maddox S. v. Mathew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016); *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009) (joint decisionmaking by parents not in child's best interests when parents are unable to communicate and there is level of distrust). Parents' inability to communicate and make decisions together several years after the initial parenting plan was agreed to constitutes a material change of circumstances. See *State on behalf of Maddox S. v. Mathew E., supra.*

The district court found that the parents' inability to communicate as mature adults represented a material change of circumstances. The district court's determination is supported by the record. The evidence reveals that Thomas sent derogatory text messages to Sloup, accusing her, among other inappropriate statements, of being a bad mother. Further, Sloup testified that she would try and communicate with Thomas regarding the children but Thomas was rude and difficult to work with. Additionally, Sloup indicated at the modification hearing that she invited Thomas to attend interviews with preschools for the children, but Thomas did not agree with the decision to send the children to preschool and did not attend. Sloup also explained that Thomas would talk about her in a derogatory way or in a manner which made the children not want to return to her house.

Additionally, Thomas' hiring of a private investigator who attached a GPS device to Sloup's car further deteriorated the relationship between the parties. The court noted that "[Sloup's] discovery of the tracking device did nothing to improve her already diminished level of trust in [Thomas], or improve the parties' ability to communicate with one another."

The record also reveals that Sloup did not communicate effectively with Thomas either. She failed to provide him with the appropriate information when she took the children out of the state, and failed to notify him consistently of the children's doctor's appointments and changes in their medications. She also talked derogatorily about Thomas in front of the children.

Although Thomas argues that the parties did not communicate effectively at the time the parenting plan was agreed to, thus, their poor communication cannot constitute a material change of circumstance, there is nothing in the record to support a finding that this was a circumstance of which the court was aware. The original parenting plan was adopted as the result of a stipulation; the ability of the parties to communicate was not addressed. The plan itself stated that its overriding purpose was "to establish, facilitate, and encourage mutual, continued and meaningful discussion of all major decisions regarding the children's education, health care, physical, emotional and social development, and religious upbringing. . . ." Therefore, the parenting plan contemplated that the parties would be able to effectively coparent their children and their inability to do so was a material change in circumstances. A material change in circumstances means the occurrence of

something which, had it been known to the court at the time of the initial decree, would have persuaded the court to decree differently. *Schrag v. Spear, supra*. Thus, the district court did not abuse its discretion in determining that the parents' inability to communicate with one another as mature adults represented a material change in circumstances.

Before custody may be modified based upon a material change in circumstances, it must be shown that the modification is in the best interests of the child. *Schriner v. Schriner*, 25 Neb. App. 165, 903 N.W.2d 691 (2017). In determining a child's best interests in custody and visitation matters, factors to be considered include the relationship of the minor child to each parent; the desires and wishes of the minor child; the general health, welfare, and social behavior of the minor child; and credible evidence of abuse. See Neb. Rev. Stat. §§ 42-364(2) and 43-2923 (Reissue 2016).

Additionally, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

The district court found that granting Sloup sole legal custody of the children was in the children's best interests. The record indicates that Sloup arranged doctor's appointments for the children, found daycare for the children, and enrolled the children in school. It is clear from the record that the children are generally healthy, happy, and love both parents. However, the parents' inability to agree on decisions regarding the children's education and daycare providers, and inability to effectively communicate with one another is not in the children's best interests.

Sloup testified that Thomas did not agree with her decision to enroll the children in preschool, and therefore did not pay his share of daycare fees until just 2 days before a scheduled pretrial hearing. Likewise, Thomas did not participate in interviews with various preschools for the children. Although Sloup did enroll the children in kindergarten before they were ready, she had sound reasons for believing that the children would succeed in kindergarten, even though they had to attend kindergarten twice. We note that the court's order modifying the parenting plan did not eliminate paragraph 23, which requires the parents to discuss significant matters regarding the children in areas such as health, medical, school, and behavioral or discipline issues. Thus, while we find no abuse of discretion in awarding Sloup sole legal custody of the children, she is still obligated to discuss significant matters affecting the children with Thomas.

After reviewing the record, we find that, when they are able to communicate with one another, the parents have been unable to agree on decisions regarding the children. The hostility between Thomas and Sloup and their inability to coparent the children is detrimental to the children's best interests. Consequently, the district court did not abuse its discretion in awarding sole legal custody to Sloup.

*Modification of Thomas' Parenting Time.*

Thomas asserts that the district court erred in reducing his parenting time from eight overnight visits a month to four, and granting him just 2½ hours of parenting time each Wednesday. We first note that Thomas is incorrect in his assertion that the district court granted him visitation with the children only on the Wednesday of the week in which he did not have the children on the weekend. Rather, the district court granted him visitation every Wednesday from 5 p.m. until 7:30 p.m. Regardless of Thomas' misinterpretation, we find that the district court abused its discretion in reducing Thomas' parenting time.

The right of parenting time is subject to continuous review by the court, and a party may seek modification of a parenting time order on the grounds that there has been a material change in circumstances. See *Smith-Helstrom v. Yonker*, 253 Neb. 189, 569 N.W.2d 243 (1997). The trial court has discretion to set a reasonable parenting time schedule. See *Maranville v. Dworak*, 17 Neb. App. 245, 758 N.W.2d 70 (2008). The determination of reasonableness is to be made on a case-by-case basis. *Id*. The best interests of the children are the primary and paramount considerations in determining and modifying parenting time. *Fine v. Fine*, 261 Neb. 836, 626 N.W.2d 526 (2001). Parenting time relates to continuing and fostering the normal parental relationship of the noncustodial parent. *Id*.

A visitation schedule is generally considered reasonable if it is one that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). There is not a certain mathematical amount of visitation that is considered reasonable; the determination of reasonableness is to be made on a case-by-case basis. *Id*.

Appellate courts have affirmed the modification of a non-custodial parent's visitations with the children to minimize opportunities for ongoing conflict, see *Schriner v. Schriner*, 25 Neb. App. 165, 903 N.W.2d 691 (2017); if the children's safety was at risk, see *Fine v. Fine*, 261 Neb. 836, 626 N.W.2d 526 (2001); or if a parent attempts to detrimentally interfere with the relationship between the child and other parent, see *Mark J. v. Darla B.*, 21 Neb. App. 770, 842 N.W.2d 832 (2014). In contrast, the Nebraska Supreme Court has affirmed a district court's denial of a motion to modify parenting time not only due to the absence of a material change of circumstances, but because it was not shown to be in the child's best interest. See *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015).

In *State on behalf of Jakai C. v. Tiffany M., supra*, the district court noted that the parents failed to appropriately communicate in regard to the child, there were numerous violations of the parenting plan, and the mother's negative comments about the father were concerning. However, the court further found no evidence was produced to show how this adversely affected the child. The Supreme Court agreed. Likewise, we find in the present case an absence of evidence to support a decision that a reduction in Thomas' parenting time was in the children's best interest.

Sloup sought a modification of parenting time on the bases that Thomas refused to respect her boundaries and the parties could not effectively communicate. Although the district court identified these as a basis for awarding legal custody to Sloup, it did not indicate any findings to support why they should serve as a basis for reduction in parenting time or how such a reduction

- 8 -

was in the children's best interests. The district court indicated that "the best interests of the children are the primary and paramount considerations determining and modifying parenting time," but the court's modification order does not identify any factors specifically related to actual parenting skills which support its conclusion.

Upon our de novo review of the record, we find that the record does not support a reduction of Thomas' parenting time. It appears that the children enjoyed spending time with Thomas and were eager to see him on his parenting days. Further, the children often did not want to return to Sloup at the conclusion of Thomas' parenting time. Moreover, there is nothing in the record indicating that Thomas is an unfit parent or does not act in the children's best interests. Although Sloup asserted that Thomas exposes them to dangerous farm machinery or farm animals, the record does not support her assertion of danger. Thomas was present with the children in each situation that Sloup alleged to be dangerous, and there is no indication that the children were at risk in any of the situations.

Additionally, under the district court's modification of Thomas' parenting time, his face-to-face exchanges with Sloup increase. Under the original parenting plan, Thomas was to pick the children up from school or daycare on Thursday, and then return the children to school or daycare on Monday morning. However, under the court's modified plan, Thomas is to pick the children up at 5 p.m. on Friday, and return them to Sloup on Sunday evening. With the acrimonious relationship between the parents, an increase in face-to-face exchanges could lead to additional conflict between the two. Thus, the record does not support the district court's decision to reduce Thomas' parenting time on the basis of minimizing opportunities for ongoing conflict as in *Schriner v. Schriner, supra*.

Because the district court's decision to reduce Thomas' parenting time is not supported by the evidence and is not shown to be in the children's best interests, we find that the district court abused its discretion in reducing Thomas' parenting time. We therefore reverse the portion of the court's order and reinstate the original parenting plan that provided for two separate periods of visitation. Thus, from November 2 until April 14, and from June 2 until September 14, Thomas shall have parenting time every other weekend from after school on Thursday until Monday morning until 8 a.m. On the week that he does not have the children, Thomas will have parenting time on Thursday from 12 p.m., or after school if school is in session, until 8:30 p.m. From April 15 until June 1, and from September 15 until November 1, Thomas will have parenting time from Saturday at 5 p.m. until Sunday at 8 p.m. Under this schedule Thomas will have parenting time every Thursday from 12 p.m., or after school if school is in session, until 8:30 p.m. Because Sloup did not cross-appeal the district court's decision to award Thomas additional summer parenting time, we leave intact the court's modified summer parenting schedule granting Thomas an additional 2 weeks of parenting time in the summer.

## CONCLUSION

We determine that the district court did not abuse its discretion in denying Thomas' request for sole physical custody of the children or in granting Sloup sole legal custody of the children. However, the district court abused its discretion in reducing Thomas' parenting time. We therefore affirm the district court's order, but we reverse that portion reducing Thomas' parenting time to

four overnight visits per month and reinstate the parties' parenting time schedule contained in the original parenting plan as set forth above.

AFFIRMED IN PART, AND IN PART REVERSED.